[No. 31056-2-II.   Division Two.   April 26, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. BILLY JOE ULESTAD, *Appellant*.

*John A. Hays*, for appellant.

*Arthur D. Curtis, Prosecuting Attorney*, and *James D. Senescu, Deputy*, for respondent.

¶1 ARMSTRONG, J. — Billy Joe Ulestad appeals his convictions for two counts of first degree child molestation. Ulestad argues that the trial court denied him his constitutional right to counsel when it allowed the victim to testify at a *Ryan*[1] hearing and at the trial via one-way television without providing constant communication between him and his attorney.[2] Holding that the trial court must strictly follow the statute governing closed circuit victim testimony and failed to do so here, we reverse.

## FACTS

¶2 The State charged Ulestad with four counts of first degree child molestation for incidents with five-year-old

---

[1] *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984).

[2] Ulestad raises several assignments of error. Because we find reversible error here, we address this issue only.

N.G.[3] Additionally, the State charged Ulestad with one count of first degree child molestation and one count of attempted first degree child molestation for incidents with N.G.'s half-sister A.[4]

¶3 At a hearing to determine the admissibility of N.G.'s statements to her mother, cousin, and the police,[5] N.G. would not or could not testify in Ulestad's presence. The court ruled that she could testify via closed circuit television as RCW 9A.44.150 allows.[6] Although the statute requires the court to provide the defendant with constant communication with his attorney, generally via a headset, the trial court lacked the technology to provide such contact. Instead, the trial court placed Ulestad in separate chambers with a television monitor showing the proceedings as they occurred. Two custody officers accompanied him. The trial court instructed the officers to stop the proceedings if at any time Ulestad wished to speak with his attorney. Ulestad objected to the ruling.

¶4 At trial, N.G. again could not testify in Ulestad's presence. The State moved to allow N.G.'s testimony via closed circuit television. Ulestad objected, arguing that the State had failed to meet the foundational requirements of RCW 9A.44.150. At a hearing outside the jury's presence, the court heard testimony about N.G.'s ability to testify in court. The police, N.G.'s mother, and the State testified that N.G. was unwilling to even enter the courtroom with Ulestad. The trial court ruled this sufficient and allowed the remote testimony.

---

[3] Ulestad lived with N.G., her mother, and N.G.'s half-sister A. at the time of the incidents. The accusations against Ulestad arose when N.G.'s mother came home to find N.G. and Ulestad sleeping on the couch. She confronted N.G., who eventually admitted that Ulestad had touched N.G. on her "private" and that he had made her touch his penis. Report of Proceedings at 268-70, 276-81.

[4] A. testified that Ulestad had molested her three times, beginning when she was nine years old. The jury acquitted Ulestad of these charges.

[5] The trial court ultimately ruled her statements admissible.

[6] RCW 9A.44.150 allows sexual abuse victims under the age of 10 to testify in a room outside the defendant's presence via one-way closed circuit television.

¶5 The court placed N.G. and the attorneys in separate chambers; Ulestad, the judge, and the jury remained in the courtroom. The court instructed that if counsel wanted to object to any of N.G.'s testimony, he could do so on the record. The judge would then lean through the door to the room where N.G. was, hear the objection, and then rule from the bench. Again, the trial court did not provide constant communication between Ulestad and his attorney. Instead, the court directed Ulestad to stop the proceedings if he wanted to speak with his attorney.

¶6 The jury convicted Ulestad of two counts of first degree child molestation for the incidents with N.G.

## ANALYSIS

¶7 Ulestad argues that the trial court denied him his constitutionally protected right to counsel when it failed to provide him with means to constantly communicate with his attorney during N.G.'s testimony.

¶8 RCW 9A.44.150 allows a witness to testify by closed circuit television if the court determines that requiring a child under the age of 10 to testify in the defendant's presence would be unduly traumatic to the victim. *State v. Foster*, 135 Wn.2d 441, 444, 957 P.2d 712 (1998). The statute provides in part:

(1) On motion of the prosecuting attorney in a criminal proceeding, the court may order that a child under the age of ten may testify in a room outside the presence of the defendant and the jury while one-way closed circuit television equipment simultaneously projects the child's testimony into another room so the defendant and the jury can watch and hear the child testify if:

(a) The testimony will describe an act or attempted act of sexual contact performed with or on the child by another.

. . . .

(c) The court finds by substantial evidence, in a hearing conducted outside the presence of the jury, that requiring the child to testify in the presence of the defendant will cause the

child to suffer serious emotional or mental distress that will prevent the child from reasonably communicating at the trial.

. . . .

(h) When the court allows the child to testify outside the presence of the defendant, *the defendant can communicate constantly with the defense attorney by electronic transmission* and be granted reasonable court recesses during the child's testimony for person-to-person consultation with the defense attorney.

RCW 9A.44.150(1)(a), (c), (h) (emphasis added).

¶9 The statute touches rights guaranteed by the sixth amendment to the United States Constitution and article I, section 22 of the Washington Constitution. These rights include the right to counsel at every critical step in the adjudication process. *Coleman v. Alabama*, 399 U.S. 1, 7, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970) (citing *Powell v. Alabama*, 287 U.S. 45, 69, 53 S. Ct. 55, 77 L. Ed. 2d 158 (1932)). We closely monitor any limitations on these constitutional rights. *Coleman*, 399 U.S. at 7.

¶10  In *Foster*, the Washington Supreme Court rejected a confrontation clause challenge to RCW 9A.44.150. *Foster*, 135 Wn.2d at 444. The court reasoned that the "use of closed-circuit testimony, when necessary and under the procedures and protections outlined in RCW 9A.44.150, does not violate a defendant's right to confront the witnesses against him." *Foster*, 135 Wn.2d at 470. Important to the court's decision were the statute's protective procedures, including the right to "constant communication with defense counsel by electronic means." *Foster*, 135 Wn.2d at 469.

¶11  The constitutional right to assistance of counsel includes the "opportunity for private and continual discussions between defendant and his attorney during the trial." *State v. Hartzog*, 96 Wn.2d 383, 402, 635 P.2d 694 (1981); *see also Geders v. United States*, 425 U.S. 80, 96 S. Ct. 1330, 47 L. Ed. 2d 592 (1976); *Perry v. Leeke*, 488 U.S. 272, 109 S. Ct. 594, 102 L. Ed. 2d 624 (1989). And except for a limited right to control attorney-client communication

when the defendant is testifying, any interference with the defendant's right to continuously consult with his counsel during trial is reversible error without a showing of prejudice. *Perry*, 488 U.S. at 279-80.

■ ¶12 The court failed to provide Ulestad with constant communication with his attorney as required by subsection (h) of RCW 9A.44.150. Instead, the court allowed Ulestad to communicate with his attorney only by stopping the proceedings. But this is delayed, not constant communication. Moreover, to talk with his attorney, Ulestad had to signal his intent to do so in front of the jury and interrupt the trial. Such a procedure carries substantial risk that the defendant will be intimidated from exercising even this limited communication with his attorney. We hold that the trial court erred in failing to strictly follow the constant communication requirement of RCW 9A.44.150. The error is reversible without a showing of prejudice.

¶13 We reverse and remand.

MORGAN, A.C.J., concurs.

¶14 HUNT, J. (dissenting) — I respectfully dissent. I disagree with the majority that the trial court committed reversible error solely because it provided one-way, rather than two-way, closed-circuit television of a child victim's testimony, augmented by an alternate method for defendant-counsel consultation. I would hold that (1) this alternate procedure substantially complied with the statutory requirements of RCW 9A.44.150 and (2) in the absence of a specific allegation or showing of actually denied of access to counsel, the lack of strict compliance did not violate Ulestad's constitutional right to counsel and does not warrant reversal.

¶15 Lack of accessible technology to meet the statute's two-way television requirement dictated that the trial court develop an alternate method so that the traumatized child victim could testify without being in the same room as her attacker. The trial court's alternate method allowed

Ulestad to see and to hear the child victim's testimony and counsel's questions on closed-circuit television in an adjacent room, with its door open to the courtroom, where Ulestad sat with the judge and the jury. During the victim's testimony, Ulestad could signal the trial court at any time if he wanted to speak with his attorney.

¶16 Although Ulestad argues that this arrangement violated his right to continuous contact with counsel, he has neither alleged nor shown (1) any actual inability to consult with counsel during the trial or (2) any specific time when this arrangement chilled or prevented his contact with counsel about a specific fact or legal issue.

## FACTS

¶17 The trial court determined it lacked the resources and technological capability for two-way closed-circuit television.[7] Nonetheless, even with these limitations, the trial court provided a reasonably equivalent procedure to comply with RCW 9A.44.150, namely a one-way closed-circuit television with an alternate method for Ulestad to communicate with his counsel.[8]

---

[7] Pretrial, the court investigated "whether [it] had the technological capability to do closed-circuit television." Report of Proceedings (RP) at 18: The trial court concluded,

It's pretty hard to work in an environment where the state Legislature passes a law that creates a dynamic under which we can operate and protect the rights of our citizens but yet we don't have the money to get the technology to make it possible to invoke that law. . . . We don't have the technology. . . . We don't have the technology, we don't have the money to do a closed-circuit testimony of a child in this kind of environment, which this statute contemplates.

There was a method that we kicked around . . . but we worked on it for about, what, fifteen, twenty minutes trying to find alternative methodologies to trigger this statute to make it work. We don't have the capability of doing that, okay?

RP at 18-19.

[8] Pretrial, the court noted,

It's not truly a closed-circuit scenario that I'm about to do in this case, it's more likened to . . . that [which] we used in terms of what to do with a disruptive defendant . . . where a defendant was being disruptive and he arranged for the defendant to be in another room where he could view the entire proceedings vis-à-vis [Jefferson Audio Visual System] systems we have here, we can see

¶18 Under this alternate procedure, Ulestad, the trial court, and the jury remained in the courtroom, while the victim testified via closed-circuit television from the court's adjacent chambers in the presence of, and in response to questioning by, the prosecutor and defense counsel. The door was open between the courtroom and the adjacent chambers such that the trial court could lean through the open door to rule on any objections by counsel. Ulestad could see and hear the televised testimony, and he could signal the trial court at any time if he wished to consult with his attorney or stop the proceedings. Similarly, defense counsel could object on the record in front of the television camera or otherwise request to confer with Ulestad. Nothing in the record shows any thwarted attempt by Ulestad or his attorney to consult with one another during the victim's closed-circuit televised testimony.

## ANALYSIS

### I. SUBSTANTIAL COMPLIANCE

¶19 Strict compliance with legislatively mandated procedures is not always required. *Kim v. Lee*, 102 Wn. App. 586, 591, 9 P.3d 245 (2000). Where the literal expression of legislation may be inconsistent with the general objectives or policy behind it, the substantial compliance doctrine allows courts to "give legislative commands a rational interpretation founded upon their design." *Williamson, Inc. v. Calibre Homes, Inc.*, 147 Wn.2d 394, 401, 54 P.3d 1186 (2002).

¶20 To comply substantially with a statute, courts must find " 'actual compliance in respect to the substance essential to every reasonable objective of the statute.' " *Chrisp v. Goll*, 126 Wn. App. 18, 24, 104 P.3d 25, 28 (2005) (quoting *In re Habeas Corpus of Santore*, 28 Wn. App. 319, 327, 623 P.2d

---

everything that's going on, and had the ability to communicate with his attorney.
RP at 19-20.

702, *review denied*, 95 Wn.2d 1019 (1981)). This analysis requires courts to determine whether " 'there has been actual compliance with the statute, albeit procedurally faulty.' " *Chrisp*, 126 Wn. App. at 24 (quoting *City of Seattle v. Pub. Employment Relations Comm'n*, 116 Wn.2d 923, 928, 809 P.2d 1377 (1991)).

¶21 Such is the case here. In the absence of readily available, strictly complying technology, the trial court nonetheless used a reasonable alternate procedure that substantially complied with the statutory requirements. More importantly, this alternate procedure complied with the substantive objectives of RCW 9A.44.150, namely (1) protection of the child witness, who was emotionally incapable of testifying in the same room as her attacker;[9] and (2) protection of Ulestad's constitutional rights to confront the witness against him and to representation by counsel,[10] of which the trial court was keenly aware. The trial court expressly noted, for example, "[O]ne of the things that I'm very, very sensitive to is your ability to communicate with your attorney," Report of Proceedings (RP) at 143; and "[O]ne of the fundamental things I'm doing in this case is . . . to actually give the defendant the right of confrontation so that he can see what the child is testifying to and—and have a chance to communicate that with his attorney." RP at 161-62.

¶22 The record reveals no instance in which the trial court's alternate procedure thwarted Ulestad's ability to consult with counsel. Ulestad fails to point to any instance in which he signaled or expressed his desire to speak with counsel and in which the trial court ignored or denied his request. Similarly, he fails to point to any instance in which defense counsel asked to consult with Ulestad and the trial court denied him access. Moreover, Ulestad alleges no

---

[9] The trial court allowed the child victim to testify via closed-circuit television, outside her attacker's presence, because it found that she would suffer "serious emotional distress" if she had to testify in the presence of the defendant and that "there's just no way to even get through a 9A.44 hearing when the defendant is here." RP at 21-22.

[10] U.S. Const. amend. VI; Wash. Const. art. I, § 22.

specific point that he wanted to discuss with counsel but which this alternate procedure chilled him from raising. As I explain in the next section, absent a showing of a specific inability to consult with counsel, lack of continuous contact during a trial does not automatically warrant reversal of a criminal conviction.

¶23 Here, the trial court dutifully strived to protect the child victim while assuring Ulestad's constitutional rights to confront the key witness against him with the assistance of counsel.[11] I would hold that the trial court substantially complied with RCW 9A.44.150.

---

[11] This is not a case like *State v. Smith*, 148 Wn.2d 122, 59 P.3d 74 (2002), in which the trial court denied the defendant's right to confrontation when it allowed child victim hearsay testimony without the child being called to the witness stand. In *Smith*, the child victim lacked the emotional stamina to testify in the courtroom with the defendant present. The small county court lacked the necessary technology and resources to provide any kind of closed-circuit televised testimony from another location. The Supreme Court reversed the conviction because the trial court had not explored alternatives to live courtroom testimony, such as remote testimony via closed-circuit television, before deciding to allow the child hearsay testimony in the absence of the child's live testimony.

Focusing on the inadmissibility of the child victim's hearsay statements under these circumstances, the court held:

> [B]efore a court can find a child victim unavailable for the purpose of admitting his or her hearsay statements under RCW 9A.44.120, it must consider the use of closed-circuit television pursuant to RCW 9A.44.150 if there is evidence that the child victim may be able to testify in an alternative setting. In addition, if closed-circuit television equipment is not readily available in the courtroom, the court may consider whether the cost of bringing in outside equipment is unreasonable. Because testimony was offered in this case that J.S. might be able to testify in an alternative setting, the trial court erred in admitting her hearsay statements without first determining that she would not be able to testify via closed-circuit television or that bringing in outside equipment would be financially unreasonable.

*Smith*, 148 Wn.2d at 139-40.

In contrast, here, the trial court did not deny Ulestad's right to confront the child witness, in spite of the lack of technology and resources to provide two-way closed-circuit television. Rather than simply excusing the traumatized child witness from testifying live and admitting her hearsay statements, as was the case in *Smith*, the trial court devised the best available alternative under the circumstances—allowing the child victim to testify from the adjacent room, where she could not see Ulestad, and allowing Ulestad to watch and listen to her testimony on a one-way closed-circuit television, during which he has not shown that he was unable to consult with counsel using the alternate procedure.

## II. No Showing of Denied Access to Counsel

¶24 Furthermore, even if the trial court's substantial compliance was insufficient to satisfy RCW 9A.44.150, I would hold that its noncompliance with the two-way closed-circuit television requirement was harmless, not reversible, error. As previously noted, Ulestad has neither alleged nor shown any instance of inability to confer with counsel during the victim's testimony or any harm to his defense flowing from the procedure implemented by the trial court.

¶25 A Fourth Circuit case is instructive on the necessity of showing an actual deprivation of the right to consult with counsel in order to obtain reversal of a conviction based on a trial court's temporary limitation of the defendant's access to counsel. In *Stubbs v. Bordenkircher*, 689 F.2d 1205, 1207 (4th Cir. 1982), *cert. denied*, 461 U.S. 907 (1983), the trial court prevented the defendant's meeting with his attorney during a recess while the defendant was on the witness stand:

> [T]here was no objection by either counsel or the petitioner to the trial court's admonition nor does the record disclose that either the attorney or the petitioner at any time requested permission for a consultation.
>
> The record indicates that Stubbs was in precisely the same position as the petitioner in *Bailey v. Redman*, 657 F.2d 21 (3[d] Cir. 1981). In that case the Third Circuit held that a petitioner must demonstrate that the restriction of the trial court deprived him of a constitutional right which he sought to exercise. In its opinion the court agreed with the district judge that
>
> > [while it] is one thing to say that a defendant who has been deprived of the guiding hand of counsel need not demonstrate the prejudicial effect of that deprivation; it is quite another to say that he need not show that the challenged order deprived him of counsel he would otherwise have received.
>
> 657 F.2d at 24.
>
> We agree with the Third Circuit that *in order to obtain relief a petitioner must show a "deprivation" of his Sixth Amendment*

*rights by demonstrating that he wanted to meet with his attorney but was prevented from doing so by the instruction of the trial judge.* Since, in this case, Stubbs has not demonstrated such a "deprivation", it was error to grant him relief.

*Stubbs*, 689 F.2d at 1207 (second alteration in original) (emphasis added).

¶26 Although *Stubbs* focuses on restricted access to counsel during a defendant's testimony, its requirement that the defendant show actual deprivation of his right to counsel at some specific moment or for some specific purpose nonetheless applies here. Under the *Stubbs* rationale, it is not sufficient for Ulestad to allege, as he does here, mere denial of continuous two-way access to counsel. Rather, he is entitled to ask us for reversal only if he shows or alleges actual instances where he desired to consult with counsel but where the trial court's alternate procedure chilled or prevented him from doing so. This he has failed to do.

### III. CONCLUSION

¶27 Although Ulestad and his attorney objected generally to the trial court's alternate procedure, they never asserted to the trial court that (1) this procedure actually deprived them of communication; (2) Ulestad would be, or was, too embarrassed to raise his hand to stop the proceeding; or (3) they had been denied an opportunity to consult during the proceeding. Furthermore, the record shows no independent evidence of any embarrassment on Ulestad's part at any time to signal the court in order to talk to counsel. In short, Ulestad has not alleged that there was any actual deprivation of counsel at any point during the victim's televised testimony. Some showing of actual, rather than presumed, deprivation of access to counsel should be a prerequisite to reversal.

¶28 I would hold that the trial court took reasonable measures to effectuate the intent of RCW 9A.44.150, thereby protecting Ulestad's constitutional rights, as dem-

onstrated by the lack of any showing of actual deprivation of his ability to consult with counsel during the victim's closed-circuit televised testimony. Accordingly, I would affirm.

Review denied at 156 Wn.2d 1003 (2006).