# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>MARCUS ANTHONY REED,<br><br>                              Petitioner. | No. 53037-6-II<br><br>UNPUBLISHED OPINION |

LEE, J. — Marcus A. Reed brought a personal restraint petition (PRP) alleging he is being unlawfully restrained for his convictions for first degree murder, first degree burglary, first degree unlawful possession of a firearm, and two counts of second degree assault. Reed argues that the trial court violated his constitutional right to privately confer with his attorney and that he is entitled to resentencing because the trial court improperly sentenced him as a persistent offender.

We hold that the trial court did not violate Reed's constitutional right to privately confer with his attorney, but Reed is entitled to resentencing because the trial court based his persistent offender status on a prior conviction for second degree robbery, which is no longer considered a most serious offense for the purposes of sentencing someone as a persistent offender. Therefore, we deny in part, grant in part, and remand to the trial court for resentencing.

## FACTS

Two men robbed the inhabitants of a motel room. *State v. Davis*, No. 48324-6-II, slip op. at 3 (Wash. Ct. App. Aug. 15, 2017) (unpublished).[1] One of the robbers shot and killed one of the motel room inhabitants, Donald Phily. *Id.* Following the robbery, Reed bragged about shooting

---

[1] https://www.courts.wa.gov/opinions/pdf/D2%2048324-6-II%20Unpublished%20Opinion.pdf.

Phily. *Id.* at 4. The State charged Reed with first degree felony murder, first degree robbery, first degree burglary, first degree unlawful possession of a firearm, and two counts of second degree assault. All charges included firearm enhancements except for the charge for first degree unlawful possession of a firearm. The case proceeded to a jury trial in which Reed and another man were tried as co-defendants. *Id.* at 1.

A.      LISTENING DEVICE AT TRIAL

More than thirty witnesses, including individuals who were in the hotel room and involved in the robbery, testified at trial. Phily's mother, Linda Phily, was the first witness to testify at trial and observed the trial after testifying.

While observing the trial, Linda[2] used a hearing device as an accommodation for a disability. The trial court told the parties that Linda was using a hearing device and stated that

> when that device is turned on, it picks up conversations in the courtroom. If there needs to be conversations between you and your client, and you want the hearing device silenced for some reason, you need to alert the Court of that.

2 Verbatim Report of Proceedings (VRP) (Oct. 15, 2015) at 242.[3] Reed's attorney asked the trial court if she needed to ask the court for permission before speaking to Reed. The trial court answered:

> [T]hat's not what I'm saying at all. What I'm saying is you have to be circumspect of what you are talking about in here because the hearing devices that are used in the courtroom pick up conversations that a person normally wouldn't be able to hear.

---

[2] For clarity, this opinion refers to Linda Phily by first name because she shares a last name with the victim. We intend no disrespect.

[3] The record from Reed's direct appeal was transferred to this case. All VRP citations in this opinion refer to the VRP from Reed's direct appeal.

2 VRP (Oct. 15, 2015) at 242. The trial court also indicated that even a whispered conversation could be picked up by the hearing device. Reed's attorney expressed concern with the hearing device:

> [M]y concern is that conversations that I have with my client, which I need to do because he needs to assist me during this trial, that those conversations may be overheard by the victim's mother who is seated in the gallery, and I think it interferes with my ability to represent my client if I have to worry about whether or not my conversations are being overheard.

2 VRP (Oct. 15, 2015) at 242-43.

The trial court responded that it was an open and public courtroom, and the trial court was required to make reasonable accommodations for individuals with disabilities. The trial court reiterated several suggestions to Reed and his attorney:

> What I'm telling you is that the hearing assisted devices that are utilized, and I recall this from when I was practicing on the defense side, is it can pick up conversations that otherwise a normal hearing person would not be able to given the distance, so what I'm suggesting to the both of you, both to you and [Reed's co-defendant's counsel] is that you be circumspect in those conversations, do them in writing or whatever, if there needs to be something of importance said, you merely need to report the Court. If it takes that we have to take a break so you can have a conversation with your client, then I will do so. I just want to make you aware of that.

2 VRP (Oct. 15, 2015) at 243.

Reed's attorney then stated that she was aware of how sensitive the hearing devices could be and felt that she was unable to communicate freely with Reed. Reed's attorney explained that, because she was concerned about Linda overhearing their conversations, she believed the use of the hearing device interfered with her ability to assist Reed.

The trial court stated that the device would be turned off whenever there was a break in the trial so it would not pick up conversations during that time. The trial court also stated that

> the accommodation I think that must be made is those communications while we are in session must be in writing, unless there is something that you need to talk about vocally with either of your clients, you merely need to let the Court know that you want to take a break and the . . . Court will accommodate you in doing so.

2 VRP (Oct. 15, 2015) at 244.

The parties discussed moving the receiver, and the trial court moved the device away from the defense table and closer to the witness stand. The trial court repeated that it would make every requested accommodation for counsel and the defendants to speak in private while the hearing device was being used. The trial court also stated that it was not making a finding that Linda could overhear anything at all, but it was speaking to its own past experience. The prosecutor stated that he was going to ask Linda to alert him immediately if she began to hear any type of communication so they could address it, and that he had explained to her the importance of counsel being able to confer with clients privately. The record does not show that any conversations between Reed and his counsel were actually heard by Linda through the listening device.

Later, during the testimony, the trial court asked someone to check with a person in the gallery because it believed they were complaining about the hearing device. The trial court then told the gallery not to speak out loud during the testimony. The trial court later stopped the testimony to ask someone if there was a problem with the hearing device and if they could "hear okay?" 3 VRP (Oct. 19, 2015) at 429. The record does not show a recess occurring after either of these interruptions.

According to Reed's declaration in support of this petition, Reed lost all confidence in his attorney's ability to represent him; he feared the State had gained an unfair advantage because he could not freely communicate with his attorney about the witness testimony. Additionally, Reed's

4

declaration states that he noticed Linda making loud noises at several points during trial, and the prosecutor called for a recess after those noises. Reed declared that these interruptions occurred "almost always" after he communicated with his attorney. Pet. Appx. B at 2. Reed also declared that the State claimed it was checking on Linda's wellbeing and spoke with her outside the courtroom. Based on these happenings, Reed's declaration states that "[i]t was pretty clear to [him] there was a sharing of information going on between [Linda] and the state." Pet. Appx. B at 2.

Two other individuals submitted declarations in support of Reed's petition. One declaration from Wendell L. Jackson, Jr., states that Jackson attended every day of trial. Jackson declared that, on each day of trial, he witnessed the prosecutor having private conversations with Linda. The other declaration was submitted by Ashley Reed, Reed's sister, and stated that she attended every day of trial. Ashley[4] declared that Linda, on multiple occasions, stated in court that she could not hear the trial. Additionally, Ashley declared that she witnessed the prosecutor walking up to Linda to have private conversations with her on several occasions.

B.    VERDICT AND SENTENCING

The jury found Reed guilty of first degree murder, first degree burglary, first degree unlawful possession of a firearm, and both counts of second degree assault. The jury found Reed not guilty of first degree robbery. The jury also found that Reed was armed with a firearm on every count except for unlawful possession of a firearm.

---

[4] For clarity, this opinion refers to Ashley Reed by first name because she shares a last name with the petitioner. We intend no disrespect.

The trial court admitted certified copies of the judgment and sentences from Reed's 2007 convictions for first and second degree robbery and from Reed's 2009 conviction for second degree robbery. *Davis*, slip op. at 12. The trial court determined that Reed was subject to sentencing as a persistent offender based on these prior convictions. *Id.* Because of Reed's status as a persistent offender, the trial court sentenced Reed to confinement for life without the possibility of release. *Id.*

C.    DIRECT APPEAL

Reed filed a direct appeal, which was consolidated with his co-defendant's direct appeal. *Id.* at 1. Reed claimed in a statement of additional grounds that Linda could hear Reed speaking with his attorney and shared the content of the conversations with the prosecution. *Id.* at 45. This court did not consider the issue because it relied on matters outside the record. *Id.* at 46. This court affirmed Reed's convictions in an unpublished opinion, and the mandate issued on January 9, 2018. *Id.* at 47.

Reed filed a timely PRP on January 2, 2019.

ANALYSIS

A.    PRP STANDARD OF REVIEW

A petitioner may request relief through a PRP when they are under unlawful restraint. RAP 16.4(a)-(c). A personal restraint petitioner must prove either a (1) constitutional error that results in actual and substantial prejudice or (2) nonconstitutional error that constitutes a fundamental defect which inherently results in a complete miscarriage of justice. *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013). Additionally, the petitioner must support the petition with factual evidence and may not rely solely on conclusory allegations. RAP

16.7(a)(2)(i); *In re Pers. Restraint of Williams*, 198 Wn.2d 342, 352, 496 P.3d 289 (2021). A "petitioner must present evidence showing that his factual allegations are based on more than speculation, conjecture, or inadmissible hearsay." *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992).

In evaluating PRPs, this court can dismiss or deny the petition if the petitioner fails to make a prima facie showing of actual or substantial prejudice or a fundamental defect, remand for a reference hearing if the petitioner makes a prima facie showing but the record is insufficient to determine the merits of the contentions, or grant the petition without further hearing if the petitioner has proved actual and substantial prejudice or a fundamental defect. *In re Pers. Restraint of Yates*, 180 Wn.2d 33, 39, 321 P.3d 1195 (2014); *In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 113, 357 P.3d 668 (2015).

B.      RIGHT TO PRIVATELY CONFER WITH ATTORNEY

Reed argues that the trial court violated his constitutional right to privately confer with his attorney by allowing Linda to use a hearing device during his trial. We disagree.

1.      Legal Principles

Both the United States Constitution and the Washington Constitution guarantee criminal defendants the right to the assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art 1, § 22; *State v. Heddrick*, 166 Wn.2d 898, 909-10, 215 P.3d 201 (2009). The constitutional right to counsel requires that defendants be able to confer privately with their attorneys at all critical stages of the proceedings. *State v. Anderson*, 19 Wn. App. 2d 556, 562, 497 P.3d 880 (2021), *review denied*, 199 Wn.2d 1004 (2022). "The ability for attorneys and clients to consult privately need not be seamless, but it must be meaningful." *Id.* The inquiry into whether there was a violation

of a defendant's constitutional right to privately confer with counsel is fact-specific. *See State v. Gonzales-Morales*, 138 Wn.2d 374, 979 P.2d 826 (1999); *Anderson*, 19 Wn. App. 2d 556.

In *Gonzales-Morales*, our Supreme Court considered whether a defendant's constitutional right to privately confer with counsel had been violated. 138 Wn.2d at 386. The defendant's primary language was Spanish, and a certified Spanish language interpreter was appointed for him at trial. *Id.* at 376. One of the State's witnesses spoke only Spanish, and the trial court allowed the State to borrow the defendant's interpreter during that witness's testimony. *Id.* at 376-77. The interpreter sat at the defense table during the State witness's testimony. *Id.* at 377. The trial court stated that, if the defendant wanted to speak with his attorney, he could alert the court, and the proceedings would be interrupted so the interpreter could assist him. *Id.* Our Supreme Court considered whether the trial court had violated the defendant's right to counsel. *Id.* at 386. Our Supreme Court noted that the defendant "could have motioned to his counsel to ask the trial court to interrupt the testimony to allow him to communicate with his counsel through the interpreter" and determined that the defendant's right to counsel was not violated. *Id.*

In *Anderson*, Division Three considered whether a set of procedures violated the defendant's right to confer privately with counsel to the point that it was a manifest error allowing the defendant to raise the argument for the first time on appeal. 19 Wn. App. 2d at 562-64. In *Anderson*, the defendant attended a resentencing hearing via video while his attorney attended telephonically. *Id.* at 560. There was no discussion during the hearing regarding the defendant's ability to communicate with his attorney. *Id.* On appeal, the court compared the situation to *Gonzales-Morales* and emphasized two differences. *Id.* at 563. In *Anderson*, unlike in *Gonzales-Morales*, the trial court did not set ground rules for how the defendant could communicate

confidentially with his attorney during the hearing. *Id.* And in *Anderson*, the defendant and attorney were not "physically located in the same room, where they might have been able to at least engage in nonverbal communication." *Id.* Further, the *Anderson* court noted that "[i]t is unrealistic to expect [the defendant] to assume he had permission to interrupt the judge and court proceedings if he wished to speak with his attorney." *Id.* Division Three determined that, based on these facts, the defendant met his burden of showing a manifest constitutional error allowing him to raise the argument for the first time on appeal. *Id.* at 563-64.

2.      No Violation Of Right To Confer

Reed attempts to liken his case to *State v. Ulestad*, 127 Wn. App. 209, 111 P.3d 276 (2005), *review denied*, 156 Wn.2d 1003 (2006). In *Ulestad*, the court considered whether the trial court violated former RCW 9A.44.150 (1990) by placing the defendant and his attorney in separate rooms while a child victim testified.[5] 127 Wn. App. at 213. The trial court told the defendant to stop the proceedings if he wanted to speak with his attorney. *Id.* On appeal, the court noted that former RCW 9A.44.150 "touches" the constitutional right to counsel. *Id.* at 214. The court held that the trial court's procedures violated former RCW 9A.44.150 because the trial court only allowed the defendant to communicate with his attorney by stopping the proceedings. *Id.* at 215. The court noted that this was "delayed, not constant communication." *Id.* The court also noted that the defendant had to signal his intent to talk with his attorney in front of the jury and interrupt

---

[5] Former RCW 9A.44.150(1)(h) provides in relevant part that a child victim may testify outside the presence of the defendant if "the defendant can communicate constantly with the defense attorney by electronic transmission and be granted reasonable court recesses during the child's testimony for person-to-person consultation with the defense attorney."

the trial, which "carries substantial risk that the defendant will be intimidated from exercising even this limited communication with his attorney." *Id.*

Here, Reed's case does not implicate the same statute that the trial court's procedures violated in *Ulestad*, because Reed's case did not involve a child testifying outside of his presence. And unlike in *Anderson* and *Ulestad*, Reed was seated next to his counsel and could indicate to his attorney that he wanted to pause the proceedings. The attorney could then be the one responsible for interrupting the judge. Because Reed would not have to interrupt the judge himself or speak aloud in front of the jury, this procedure significantly lessened the risk articulated in *Ulestad* that the defendant would be intimidated from exercising his right to speak with his attorney. 127 Wn. App. at 215.

Further, unlike in *Anderson*, Reed did not have to "assume" he was allowed to interrupt the judge and proceedings. 19 Wn. App. 2d at 563. Instead, like in *Gonzales-Morales*, the trial court set ground rules for how Reed could communicate with his attorney by explicitly stating multiple times that Reed and his attorney could alert the court of the need to speak, and the court would allow a break. And here, like in *Gonzales-Morales*, Reed and his attorney remained seated at the same table, where they could engage in nonverbal communication as necessary. Altogether, the trial court's procedures met the constitutional standards set forth in *Gonzales-Morales*.

Reed also argues that he was unable to write down his thoughts and keep up with the trial, but nothing in the record shows that this concern was raised below. Without knowing that Reed may have trouble paying attention to the trial while writing down his thoughts, the trial court had no reason and was not required to deviate from the constitutionally permissible procedures set out in *Gonzales-Morales*.

10

To the extent Reed argues that Linda actually overheard Reed's conversations with his attorney and shared the content of those conversations with the prosecutor, Reed fails to present competent evidence to support his factual allegations. There is nothing in the record that shows Linda actually overheard Reed's conversations with his attorney. Reed, however, provides his own declaration stating that Linda made loud noises, and these interruptions "almost always" coincided with him speaking with his attorney. Pet. Appx. B at 2. Reed also declared that, following these interruptions, the prosecution would call for a recess and would claim that it was checking on Linda's wellbeing. Additionally, Reed provides declarations from two individuals that only state Linda and the prosecutor had private conversations throughout Reed's trial. From this information, Reed contends that "[i]t was pretty clear to [him] there was a sharing of information going on between [Linda] and the state." Pet. Appx. B at 2. But this contention is merely speculation and conjecture, which falls short of the evidence required to support a petitioner's factual allegations. *See Rice*, 118 Wn.2d at 886.

The trial court did not violate Reed's constitutional right to privately confer with counsel by allowing Linda to use a hearing device. Accordingly, we deny Reed's PRP as to his convictions.

C.    PERSISTENT OFFENDER STATUS

Reed argues that he is entitled to resentencing because the trial court improperly sentenced him as a persistent offender. Specifically, Reed contends that the trial court should have considered his youthfulness because he pled guilty to his prior convictions at the ages of 18 and 21, that the certified judgment and sentences from his convictions did not constitute sufficient

evidence of the convictions under the Persistent Offender Accountability Act,[6] and that second degree robbery convictions cannot be used as a basis for finding that an individual is a persistent offender under RCW 9.94A.647(1). The State concedes that Reed is entitled to resentencing based on RCW 9.94A.647(1). We accept the State's concession.

In 2021, the legislature enacted RCW 9.94A.647. LAWS OF 2021 ch. 141 § 1. RCW 9.94A.647(1) provides that "[i]n any criminal case wherein an offender has been sentenced as a persistent offender, the offender must have a resentencing hearing if a current or past conviction for robbery in the second degree was used as a basis for the finding that the offender was a persistent offender." Further, second degree robbery "shall not be considered a most serious offense" for the purposes of persistent offender hearings, regardless of when the second degree robbery was committed. RCW 9.94A.647(3).

Here, the trial court found that Reed was a persistent offender based on his 2007 convictions for first and second degree robbery and his 2009 conviction for second degree robbery. *Davis*, slip op. at 12. Because Reed's 2009 conviction for second degree robbery was used as a basis for finding that Reed was a persistent offender, he is entitled to resentencing. *See* RCW 9.94A.647(1). Therefore, we remand for resentencing at which Reed's second degree robbery conviction is not considered a most serious offense for the purpose of determining Reed's persistent offender status. *See* RCW 9.94A.647(3).[7]

---

[6] Part of the Sentencing Reform Act of 1981, ch. 9.94A RCW.

[7] Reed seeks the same remedy—resentencing without his persistent offender status—for each of his other claims regarding his persistent offender status. Because Reed's persistent offender status will be addressed on remand for resentencing based on Reed's previous second degree robbery conviction, we do not address Reed's other claims challenging his persistent offender status.

No. 53037-6-II

We deny Reed's PRP in part, grant in part, and remand for resentencing without Reed's second degree robbery conviction counting as a most serious offense for purposes of determining Reed's persistent offender status.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Glasgow, C.J.

Veljacic, J.