IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of | No. 86185-9-I |
| RICHARD LANE BLAKESLEY, | UNPUBLISHED OPINION |
| Petitioner. | |

BOWMAN, J. — Richard Lane Blakesley seeks relief through a personal restraint petition (PRP) from his convictions for three counts of first degree possession of depictions of a minor engaged in sexually explicit conduct. Blakesley argues he is unlawfully restrained because the court deprived him of his constitutional right to continuously consult counsel at sentencing. We deny his petition.

FACTS

On October 12, 2021, Blakesley pleaded guilty to three counts of first degree possession of depictions of a minor engaged in sexually explicit conduct.[1] Under the plea agreement, the parties stipulated that each would be free to argue for a sentence within the standard range of 46 to 61 months of confinement. The court set a sentencing hearing for December 6, 2021. At that hearing, Blakesley appeared in person but his attorney unexpectedly appeared remotely because he had "been battling a cold/flu."

---

[1] The State agreed to dismiss a fourth count of the same charge.

The State requested a 54-month sentence, the same recommendation as the Department of Corrections (DOC) in its presentence investigation report. The State argued the mid-range recommendation was appropriate because Blakesley was "not taking full ownership for his actions in this case." Blakesley continued to claim that somebody sent him the unlawful images by mistake even though the evidence showed the images "had been downloaded or viewed over a [2]-year period." And besides minimizing his conduct, the State argued that Blakesley did not follow through with sex offender treatment pending sentencing because Blakesley believed treatment is "geared towards those with sexual addictions and is not applicable to him." The State was particularly concerned about this because Blakesley had worked as a paraeducator serving children with special needs, and he was the subject of a complaint by a female student for inappropriate conduct at one school while another school "terminated [him] for viewing pornography on school computers."

Defense counsel then addressed the court. But the court lost its remote connection with Blakesley's attorney near the beginning of his argument "for about [5] to 10 seconds." After reestablishing the connection, the court asked the attorney to "go back about [5] to 10[ ]seconds" and resume argument.

Blakesley's attorney asked for a sentence of 46 months. He pointed out that Blakesley sought a sex offender evaluation "on his own volition and without a condition of pre-trial release or order of the Court." Further, the evaluation showed that Blakesley was "low risk for re-offense." And as part of the evaluation process, he took a polygraph examination that came back "non-

deceptive." Counsel explained that Blakesley did not follow through with treatment because he knew that he would be serving a prison sentence and would "have the opportunities for a sexual offender treatment program within prison." Finally, defense counsel argued that a low-end sentence is "a small concession" for a "first-time offender who has been proactive." He pointed out that Blakesley was not eligible for a therapy-based resolution like a special sex offender sentencing alternative even though other sex offenders who have arguably committed much more serious crimes were eligible.

Blakesley also addressed the court. He said, "I take all the responsibility. I know that what I did, you know, I know the wrongdoing that I did, and I'm willing to pay for that." He explained that he had no malicious intent or premeditation. But he also told the court that he "was so naïve and out of touch with what was happening that I didn't think I was doing something wrong," and that he "would never do harm physically or mentally to anybody, much less a child."

The court again lost its remote connection with Blakesley's attorney during Blakesley's allocution. It stopped the proceedings and resumed after reconnecting, and Blakesley "c[aught] up" his attorney "on where [he] was at" in his allocution.

While the court was attempting to reconnect with Blakesley's attorney, Blakesley's girlfriend unexpectedly asked to address the court. When the court reestablished the remote connection with defense counsel and after Blakesley finished his allocution, it told defense counsel about the girlfriend's request and asked, "Is that something you wanted?" The attorney responded that if Blakesley

3

wanted his girlfriend to speak, "I have no objection to having . . . her make a statement on [his] behalf."

Blakesley's girlfriend then addressed the court on his behalf. She said that she was proud to see him take responsibility for his crimes and believed he had "a healthy mind frame to approach" rehabilitation. At one point while she was speaking, the court heard noise coming from defense counsel's computer. It stopped the proceedings to address the issue and then allowed Blakesley's girlfriend to resume.

In imposing its sentence, the court weighed several mitigating and aggravating factors. As a mitigating factor, it considered that Blakesley showed a low risk to reoffend and took responsibility for his crimes. But the court expressed concern that Blakesley "seems to have little insight into the causes of his behaviors" and justified his behavior by saying that "he never asked for [the] sexual material." So, the court determined that "the mitigating and aggravating circumstances are . . . off-setting" and sentenced Blakesley to a concurrent, standard-range sentence of 53.5 months of confinement.

Blakesley timely filed this PRP.

ANALYSIS

Blakesley argues he is unlawfully restrained because the sentencing court deprived him of his constitutional right to consult counsel at a critical stage of the proceedings. The State concedes a violation of the right to counsel but claims Blakesley cannot show prejudice. We decline to accept the State's concession but agree that even if the circumstances violated his right to counsel, Blakesley

4

cannot show prejudice.[2]

A petitioner may seek relief through a PRP when he is under unlawful restraint. RAP 16.4(a); *see In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 149, 866 P.2d 8 (1994). But relief through a PRP is extraordinary. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). A personal restraint petitioner must show either a constitutional error that resulted in actual and substantial prejudice by a preponderance of the evidence or nonconstitutional error that " 'constitutes a fundamental defect which inherently result[ed] in a complete miscarriage of justice.' " *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004) (quoting *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990)).

Criminal defendants have a state and federal constitutional right to the assistance of counsel at all critical stages of criminal proceedings. *State v. Heddrick*, 166 Wn.2d 898, 909, 215 P.3d 201 (2009); *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009); *see* WASH. CONST. art. I, § 22; U.S. CONST. amend. VI. In general, sentencing is a critical stage of the proceedings. *State v. Rupe*, 108 Wn.2d 734, 741, 743 P.2d 210 (1987).

The constitutional right to the assistance of counsel "carries with it a reasonable time for consultation and preparation," which includes the "opportunity for private and continual discussions between [the] defendant and

---

[2] Blakesley also argues that the trial court erred by relying on DOC's presentence investigation report at sentencing, which contained findings from Blakesley's pretrial psychosexual evaluation. Blakesley contends that the findings prejudiced him because he did not know at the time of his interview with DOC that the sentencing court would consider his psychosexual evaluation. But Blakesley does not support his argument with legal authority or analysis, so we do not address it. *See* RAP 10.3(a)(6).

his attorney" during the proceedings. *State v. Hartzog*, 96 Wn.2d 383, 402, 635 P.2d 694 (1981). "The ability for attorneys and clients to consult privately need not be seamless, but it must be meaningful." *State v. Anderson*, 19 Wn. App. 2d 556, 562, 497 P.3d 880 (2021). Like the right to counsel in general, whether the court violated the defendant's constitutional right to privately confer with his attorney is a fact-specific inquiry. *See, e.g.*, *Id.* at 562-63 (citing S*tate v. Gonzales-Morales*, 138 Wn.2d 374, 382-86, 979 P.2d 826 (1999)). And given the varied circumstances that may occur, we look to the totality of the circumstances in considering whether a trial court violated a defendant's right to counsel, including whether the court explicitly established a process for confidential attorney-client communication. *Bragg v. State*, ___ Wn. App. 2d. ___, 536 P.3d 1176, 1182 (2023).

A complete denial of counsel at a critical stage of the proceedings is presumptively prejudicial and calls for automatic reversal. *Heddrick*, 166 Wn.2d at 910. But not all error involving the right to counsel amounts to a complete denial of that right. *See Satterwhite v. Texas*, 486 U.S. 249, 257, 108 S. Ct. 1792, 100 L. Ed. 284 (1988). When a defendant is provided with counsel, deprivation of the right to confer with that counsel meaningfully and privately does not trigger structural error. *State v. Dimas*, No. 57528-1-II, slip op. at 6 (Wash. Ct. App. Mar. 5, 2024), https://www.courts.wa.gov/opinions/pdf/D2%2057528-1-II%20Published%20Opinion.pdf.

Citing *State v. Ulestad*, 127 Wn. App. 209, 111 P.3d 276 (2005), Blakesley argues the court deprived him of the right to counsel such that we should

presume prejudice and remand for a new sentencing hearing. In *Ulestad*, the State charged the defendant with several counts of child molestation. 127 Wn. App. at 212. At trial, the child refused to testify in the defendant's presence, so the court ordered the child and the attorneys removed from the courtroom and placed in a separate room while the defendant, judge, and jury remained in the courtroom and watched the child's testimony on closed circuit television. *Id.* at 212-13. As a result, the defendant's only means to communicate with his attorney was to signal the court to stop the proceedings in front of the jury. *Id.* at 213. Division Two of our court concluded that the trial court's actions deprived the defendant of his ability to continuously consult his attorney during trial because the only means to speak with his attorney involved interrupting the trial, which "carries substantial risk that the defendant will be intimidated from exercising" communication. *Id.* at 215. Citing *Perry v. Leeke*, 488 U.S. 272, 109 S. Ct. 594, 102 L. Ed. 2d 624 (1989), the court determined that the trial court's actions completely deprived the defendant of counsel, warranting structural error. *Id.* at 214-15.

In *Perry*, the United States Supreme Court considered whether the trial court erred by ordering a defendant not to consult with his attorney during a 15-minute trial recess after the defendant's direct testimony and before cross-examination. 488 U.S. at 274, 278-80. Under the facts of that case, the Court determined that the trial court did not violate the defendant's right to counsel. *Id.* at 284. In doing so, it recognized that government action that interferes in certain ways with the ability of counsel to make independent decisions about how to

7

conduct a defense may amount to a complete deprivation of the right to counsel, and such a violation "is not subject to the kind of prejudice analysis" that may otherwise be appropriate. *Id.* at 280 (citing *Geders v. United States*, 425 U.S. 80, 91, 96 S. Ct. 1330, 47 L. Ed. 2d 592 (1976) (bar on attorney-client consultation during overnight recess); *Herring v. New York*, 422 U.S. 853, 863-64, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975) (bar on summation at bench trial); *Brooks v. Tennessee*, 406 U.S. 605, 612-13, 92 S. Ct. 1891, 32 L. Ed. 2d 358 (1972) (requirement that defendant be first defense witness); *Ferguson v. Georgia*, 365 U.S. 570, 596, 81 S. Ct. 756, 5 L. Ed. 2d 783 (1961) (bar on direct examination of defendant)).

Here, the court provided Blakesley an attorney. And, unlike in *Ulestad* or the examples illustrated in *Perry*, the court did not take action that interfered with the ability of Blakesley's attorney to conduct a defense such that Blakesley experienced a complete denial of the right to counsel. Blakesley and his attorney were both present for the sentencing hearing, and while Blakesley's attorney appeared remotely, they could see and hear each other. Finally, because the alleged error did not occur during the testimony of a key witness at trial, Blakesley did not face the dilemma of disrupting trial in front of a jury to request to speak privately with his attorney. The circumstances here do not amount to a complete denial of counsel warranting structural error. *See Satterwhite*, 486 U.S. at 257.

Because the alleged error is not structural, Blakesley must show by a preponderance of the evidence that any violation of his right to consult his

8

attorney resulted in actual and substantial prejudice. *Coggin*, 182 Wn.2d at 119-20. Blakesley argues that if he "had the meaningful access to counsel to which he was entitled, the court likely would have imposed a lower sentence." But he fails to show how this is so. Both Blakesley and his attorney explained to the court why they believed a low-end standard-range sentence was appropriate. Blakesley does not assert that his presentation would have changed if his attorney was physically present in the courtroom. Nor does Blakesley argue that his attorney's presence would have changed his decision to have his girlfriend speak on his behalf. Indeed, his girlfriend's presentation supported Blakesley's request for a low-end sentence. Finally, the record shows that the court considered the mitigating circumstances offered by Blakesley, his attorney, and his girlfriend but rejected the request for a low-end sentence after balancing them with Blakeley's lack of insight into the causes of his behavior.

Because Blakesley fails to show substantial and actual prejudice arising from his alleged violation of the right to continuously consult his attorney, we deny his PRP.

_____, J

WE CONCUR:

_____    _____