IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>     Respondent,<br><br>  v.<br><br>DREW RICHARD THOMPSON,<br><br>     Appellant. | No. 87140-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Drew Thompson appeals from the judgments entered on a jury's verdicts convicting him of three counts of a hate crime offense and one count of indecent exposure. On appeal, Thompson asserts that he was deprived of the constitutional right to confer with his defense counsel at a critical stage of the proceeding. Because the record clearly establishes that Thompson waived that right through his own conduct, we affirm.

FACTS

The State charged Drew Thompson with three counts of a hate crime offense, one count of felony harassment, and one count of indecent exposure. Thompson appeared alongside his trial counsel for his arraignment, and his counsel entered a plea of not guilty on his behalf. Over roughly the next eight months, Thompson repeatedly refused to interact with his assigned trial counsel and refused transportation from the jail for preliminary court proceedings.

In June 2024, the parties appeared before the trial judge for pretrial proceedings. Thompson refused to be transported to the court from jail. Thompson's trial counsel represented the following to the judge:

> [DEFENSE COUNSEL]: . . . I have met with him as recent as yesterday. *He told me that he does not want to be at trial. I asked him*—
> THE COURT: Okay.
> [DEFENSE COUNSEL]: —*if he was giving me permission to proceed without him. He said—his exact words were go ahead.*
> THE COURT: Okay.
> [DEFENSE COUNSEL]: . . . I made every effort to try to get him here today. I told him if he changes his mind, that he can call me. I gave him my card again. *And I also told him that the jail staff would still try to pick him up in the morning. It sounds like they did that. And he's still not here.*

(Emphasis added.) The following exchange then occurred:

> THE COURT: . . . And I know that, [c]ounsel, *your contact with Mr. Thompson has been limited it sounds like mostly due to his preferences.* I want to make sure though that even with your limited contact, it sounds like you met with him yesterday, *do you have any other concerns?* Other—competency notwithstanding[1] anything else that you want the [c]ourt to know?
> [DEFENSE COUNSEL]: *No, Your Honor, not at this time.*
> THE COURT: Okay.
> [DEFENSE COUNSEL]: I think my concerns were dispelled by the competency report. *I think this is Mr. Thompson's decision.*
> THE COURT: Understood. Thank you, [c]ounsel.

(Emphasis added.)

The trial judge then ordered that Thompson be brought before her for a colloquy regarding his decision not to attend the court proceedings.

> [THE COURT] . . . . I have asked that Mr. Thompson be brought to court to just—to place on the record what I understand

---

[1] Thompson's trial counsel sought a pretrial inpatient competency evaluation of Thompson based on his conduct, which the court granted. After viewing the results of a subsequent competency evaluation of Thompson, which was not designated for us on appeal, the State and Thompson's defense counsel jointly recommended that the court find Thompson competent to stand trial, which the court adopted.

from counsel is your desire to waive your Constitutional right to be present at trial.

MR. THOMPSON: Yeah.

THE COURT: So that's why I have you here, Mr. Thompson. I want to ask you questions about that. Okay?

MR. THOMPSON: Okay.

. . . .

THE COURT: . . . My question for you is do you understand that you have a right to be here when your trial begins and at every stage of your trial including jury selection, everything else? Do you— do you understand that you have that right?

MR. THOMPSON: *I understand.*

THE COURT: Okay. And have you had a conversation—I'm not asking about the contents of the conversation, but I want to know that you've had a conversation with your lawyer about the fact that you have a right to be here, and that you don't want to be here. Have you had a conversation about your presence?

MR. THOMPSON: *Multiple times.*

THE COURT: Multiple times. When was the last time you had that conversation? Again I'm not asking for the content of it just when?

MR. THOMPSON: Yesterday.

THE COURT: Yesterday. Okay. And you understand that, you know, one of the primary reasons for your right to be here at trial is so that you can listen to and observe the witnesses that may be called to testify against you? Do you understand that that's really the most compelling reason that you have a right to be here, so you can hear them and see them?

MR. THOMPSON: *I understand.*

THE COURT: All right. And it is my understanding from your attorney that you do not want to be here for any portion of your trial; is that correct?

MR. THOMPSON: *That's correct.*

(Emphasis added.)

The trial judge inquired with Thompson as to why he did not want to be present, and Thompson responded that a jury would be prejudiced against him if he asked the alleged victims "why they view themselves as being victims" and the tone of his voice "is way too growly for any type of interaction in this room." The trial court found that he was "incredibly articulate" and stated, "[T]here's nothing to

- 3 -

me about your voice that would suggest . . . you can't speak." The judge also advised him that he was not required to speak directly to anyone but, rather, his attorney would speak on his behalf and, if he wanted to speak to his attorney, he could do so during a recess in private and outside of the presence of other listeners.

The judge then advised Thompson of the importance of being in court for such recesses during the following exchange:

> [THE COURT] . . . the thing that I want you to understand, and I want to make sure you understand this. We're going to have multiple breaks, right. There's going to be a morning recess. There's going to be a lunch recess.
> MR. THOMPSON: *I know. I don't need all that.*
> THE COURT: Hang on a minute. There's going to be an afternoon recess.
> MR. THOMPSON: I told you already that I've been through a homicide hearing and a murder trial. *I know how court operates.*
> THE COURT: I get it. So—but what I want to make sure you understand is of course that would be your opportunity. *And if we need to take longer breaks for you to do so, we would do so for you to talk to your attorney, communicate with him your thoughts, your impressions, your ideas about how the trial is going and what the witnesses are saying.*

(Emphasis added.)

The trial judge next informed Thompson that he could change his mind and attend court at any time during the upcoming proceedings.

> THE COURT: Okay. And so having—do you also understand that you can change your mind, right? . . . You can change your mind and be here for any portion of this trial. Do you understand that?
> MR. THOMPSON: I got it.
> THE COURT: You know you can just change your mind, right?
> MR. THOMPSON: I got that.
> THE COURT: All right. But you are telling this [c]ourt that you do not want to be here at this point for any portion of the trial including pre-trial hearings, jury selection, and the trial, which we expect to start on Tuesday morning? Is that what you're telling this [c]ourt?

MR. THOMPSON: *You all have fun.*
THE COURT: All right. All right. Thank you. All right, Mr. Thompson.

(Emphasis added.) The judge then stated,

This [c]ourt having discussed with Mr. Thompson his understanding of his Constitutional right to have—to be present in all portions and phases of his trial, he has expressed to this [c]ourt why it is specifically that he thinks it is in his best interest to not be present for the [c]ourt; he has—for trial. Pardon me.

He's also indicated to this [c]ourt that he has had multiple conversations with his attorney about this issue with regard to his—his right to be present.

The trial judge asked Thompson whether he wanted time to speak with his legal counsel about his decision, and he declined, indicating that he had "[e]ight months" of time to talk to his counsel and did not need any more.

The judge then found as follows:

Okay. This [c]ourt would specifically find that the defendant is making a knowing and voluntary decision to waive his right to be present during his trial, and we will be proceeding with pre-trial motions this afternoon and jury selection on Monday. And I have told Mr. Thompson, and he's told me he understands that he can change his mind at any time.

Immediately thereafter, the judge again inquired with Mr. Thompson:

THE COURT: —Mr. Thompson? Anything you want to add?
MR. THOMPSON: *No, I'm gone.*
THE COURT: All right, Sir. Thank you so very much.

(Emphasis added.) Thereafter, as Thompson was being taken into custody, his defense counsel said to him,

*I'm going to come visit you before you have your right to testify. Okay? So if you want to talk to me about that,* I'll let you know how

- 5 -

the trial went, and if you want to come in and testify, you have the right to do that.[2]

(Emphasis added.) Thompson responded, "Okay."

The judge then stated,

> THE COURT: All right, [c]ounsel. Tell me [c]ounsel, I didn't hear what you said, but I heard you were, you know, talking to your client about, you know, communicating with him and some paperwork. Do you need—do you need some time right now to do anything—
> [DEFENSE COUNSEL]: No, Your Honor.
> THE COURT: —in furtherance of this? No. Okay.
> [DEFENSE COUNSEL]: Thank you.

Thompson was taken out of the courtroom, and the following exchange occurred between the trial judge, a deputy sheriff from the jail where Thompson was being held in custody, and Thompson's defense counsel:

> DEPUTY SHERIFF: Do you want us to on a daily basis ask him if he wants to come to court or leave it up to him to affirmatively say I want to go to his deck officer? I can do it either way.
> THE COURT: Yeah, I prefer the former. May as well—you know, I'd rather be safe than sorry in case he forgets.
> DEPUTY SHERIFF: Okay.
> THE COURT: I would appreciate you just asking him. No need to bring him here of course every morning but just to ask whether or not he'd like to come to court.
> DEPUTY SHERIFF: Okay. I can do that.
> THE COURT: Thank you so much, [o]fficer. Appreciate it.
> DEPUTY SHERIFF: Thank you, Your Honor.
> [DEFENSE COUNSEL]: Thanks.

The State requested permission to file an amended complaint charging Thompson with three counts of hate crime offense and one count of misdemeanor indecent exposure, Thompson's counsel did not object, and the trial judge granted

---

[2] Two verbatim reports of proceeding of the June 2024 proceeding were provided on appeal. One set forth that the foregoing conversation was an "attorney/client privileged conversation" and the other set forth the exchange quoted *supra*.

the State's request. On the following court day, for jury selection and empanelment, the trial judge verified that Thompson was asked whether he wanted to come to court, indicated that she was assuming that such conversations were going to be happening, and encouraged his defense counsel to remind him that he is free to come to court, stating, "We'd be happy to have him anytime he wants."

Thereafter, a two-day trial was conducted. In the colloquy on the morning of the first day of trial, the bailiff noted, "Mr. Thompson did refuse transport this morning." The judge inquired with his defense counsel, "Anything to add?" and his defense counsel answered, "No, Your Honor." At the end of the first trial day, the judge inquired with Thompson's counsel if he had anything to bring to the court's attention and his counsel indicated that he did not. The trial judge then inquired with Thompson's counsel whether he intended to confer with Thompson on the following day, since the State expected to complete its case in chief that day, and defense counsel responded that he would go to the jail to check in with Thompson at the end of the State's case over the lunch recess.

On the morning of the second day of trial, the judge's bailiff again noted, "Mr. Thompson refused transport this morning," his defense counsel responded, "Got it," and the judge indicated that she also understood. The State rested its case later that morning. Defense counsel indicated that he was planning to visit Thompson in the jail during the lunch recess but it might take some time. He specifically stated, "I have to wait for [the jail staff] to tell me that he's refused, which usually takes like 30 minutes" and further explained that he would then be

required to tell other jail staff that Thompson refused to see him and request permission from the captain of the jail to visit Thompson in his assigned cell. The following exchange then occurred:

> THE COURT: Okay. So I'm not going to give the whole afternoon—
> [DEFENSE COUNSEL]: Of course.
> THE COURT: —to a gentleman that doesn't even want to come to trial. We have—I want to be very clear. My record has been very clear. My bailiff has called every morning. They have asked him. He's refused.
>   I know this is different than meeting with you, and so I'm going to give you some time. But I'm not going to let Mr. Thompson hijack these jurors and make them wait for him to maybe want to talk to you and maybe not.

At the end of the recess, Thompson's trial counsel stated, "Your Honor, I went to the jail. I filled out a visit slip, asked to see Mr. Thompson, and was told by jail staff that he refused to see me."[3] The judge responded,

> Okay. We have given Mr. Thompson so many opportunities to participate in this case. I feel you have done your best effort. We have called every morning and asked if he wants to participate or come to trial, and he has said no. It's clear to me he doesn't want to be involved in this case including the right to testify, and so we're going to proceed.

Thereafter, Thompson's defense counsel rested his case, the trial judge instructed the jury,[4] the parties gave closing argument, and the following day, the jury convicted Thompson as charged. Thompson elected to be transported to court for sentencing and the court imposed a total term of confinement of 58

---

[3] Thompson's trial counsel also stated, "I asked to do a cell side visit, and I was told that the captain denied my cell side visit."

[4] Jury instruction no. 6 stated, "The defendant has the right to waive his presence at trial. The defendant is not required to testify. You may not use the fact that the defendant was not present and did not testify to infer guilt or to prejudice him in any way."

months on his felony convictions and suspended imposition of confinement on his misdemeanor conviction.

Thompson timely appealed.

ANALYSIS

Thompson's sole assignment of error asserts that he was deprived of the right to confer with his trial counsel at a critical stage of the trial. Because this contention is plainly belied by the record from the trial court, which clearly establishes that Thompson waived his right to counsel by his own conduct, his assertion fails.

"Under both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution, a criminal defendant is entitled to the assistance of counsel." *State v. Brashear*, 32 Wn. App. 2d 934, 939-40, 559 P.3d 121 (2024), *review denied*, 4 Wn.3d 1018, *cert. denied*, 146 S. Ct. 233 (2025). This right "includes the 'opportunity for private and continual discussions between defendant and [their] attorney during the trial.'" *State v. Ulestad*, 127 Wn. App. 209, 214, 111 P.3d 276 (2005) (quoting *State v. Hartzog*, 96 Wn.2d 383, 402, 635 P.2d 694 (1981)). Notably, "[a] defendant can lose the right to counsel through forfeiture, waiver, or waiver by conduct." *State v. Palmer*, 24 Wn. App. 2d 1, 11, 518 P.3d 252 (2022).

As a preliminary matter, we note that Thompson does not challenge the trial court's determination that he knowingly and voluntarily waived his right to be present at trial. The record reflects that Thompson affirmatively waived his right to confer with his legal counsel by his own conduct after an opportunity to discuss the

matter with his counsel and an extensive colloquy with the trial court.  As set out *supra*, the trial judge thoroughly and accurately advised Thompson and ensured that he comprehended the consequences of his voluntary waiver of his right to be present for his trial, notably including that he would be unable to confer with his appointed legal counsel during recesses.  Thompson's responses to the judge's advisements, including "You all have fun" and "I'm gone," clearly communicated to the judge that he did not wish to participate further in the trial proceedings.  Significantly, he does not assert on appeal that the trial judge's advisements were inadequate or that he did not fully understand the consequences of his absenting himself from trial.

Furthermore, the trial judge advised and ensured that Thompson understood that he could change his mind at any point and decide to attend court proceedings alongside his trial counsel.  In supporting this possibility, the court, along with jail staff, took measures to ensure that transportation would be available to Thompson and that he was daily presented with the opportunity to be transported to court.  The record reflects that such transportation was offered to him, but he declined it each time it was offered.  He also does not challenge this portion of the record on appeal.

In addition, shortly after Thompson expressed his desire to voluntarily absent himself from trial, his own trial counsel informed him that he would reach out to him in jail at the appropriate time to determine if he was interested in testifying at trial.  Thompson acknowledged his counsel's communication.  However, when his trial counsel went to the jail during the lunch recess in question

and informed Thompson, through the jail staff, that he wished to speak with him, defense counsel was informed that Thompson had refused to speak with him. Although Thompson's trial counsel speculated before the trial judge as to whether Thompson had, in actuality, refused to speak with his legal counsel at that time, he did not present any nonspeculative evidence in support of such a proposition to the trial judge, and his appellate counsel does not present such evidence to us on appeal.

Given the foregoing, the record plainly reflects that Thompson, through his conduct, affirmatively and unequivocally waived his right to confer with his legal counsel. Thus, his assertion that he was deprived of that right fails. Accordingly, he does not establish an entitlement to appellate relief.

Affirmed.

WE CONCUR: