IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37590-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | OPINION PUBLISHED IN PART |
| DESHAWN ISAIAH ANDERSON, aka | ) | |
| DESHAWEN ISAIAH ANDERSON, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Videoconferencing has been a common feature of court proceedings during the COVID-19 pandemic. The use of videoconferencing is often necessary and it has many advantages; however, there can be overriding constitutional concerns. When videoconferencing is used, courts must take care to ensure criminally accused persons are able to confidentially confer with counsel throughout the proceedings. Failure to provide a confidential means to communicate may be grounds for reversal on appeal.

Deshawn Anderson argues he was not afforded the ability to confidentially consult with his attorney during a video resentencing hearing. We find his claim persuasive.

However, the parties agree Mr. Anderson's claim is subject to a harmless error analysis. We note Mr. Anderson prevailed on all issues raised at his resentencing hearing. There is no plausible basis for additional relief. Any denial of confidential attorney-client communications during resentencing was therefore harmless beyond a reasonable doubt. Although Mr. Anderson has established constitutional error, he is not entitled to relief.

## FACTS

In 2016, a Franklin County jury convicted Deshawn Anderson of multiple felonies including murder, assault, and unlawful possession of a firearm. Mr. Anderson received a sentence of 1,126 months' imprisonment with 36 months' community custody, and was assessed $75,430.49 in restitution. A portion of the restitution was imposed jointly and severally with two codefendants.

Mr. Anderson's convictions were affirmed in a prior appeal to this court, but we remanded for resentencing. *State v. Anderson*, No. 34655-2-III (Wash. Ct. App. Nov. 1, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/346552_unp.pdf. Three specific issues were identified for resentencing: a vague community custody condition, two scrivener's errors, and imposition of discretionary legal financial obligations in light of Mr. Anderson's indigence.

No. 37590-1-III
*State v. Anderson*

Mr. Anderson's resentencing was initially scheduled for March 31, 2020, roughly

one year after our mandate was issued. However, to accommodate Mr. Anderson's

"desire to be present," Clerk's Papers (CP) at 75, the hearing was moved. On March 26,

2020, the trial court signed an order directing Mr. Anderson's transport from the

Washington State Penitentiary in Walla Walla to Franklin County. The order specified

Mr. Anderson was to be brought before the court on May 12, 2020, at 8:30 a.m., for

"entry of an Amended Judgment and Sentence." *Id*. at 76.

Mr. Anderson's resentencing took place in the early days of the COVID-19

pandemic. Washington's governor declared a state of emergency on February 29, 2020.

Shortly thereafter, our Supreme Court began issuing a series of emergency orders

addressing court operations during the pandemic. On April 29, 2020, the Supreme Court

issued an order that specified as follows:

> Courts must allow telephonic or video appearances for all scheduled
> criminal and juvenile offender hearings whenever possible. For all hearings
> that involve a critical stage of the proceedings, courts shall provide a means
> for defendants and respondents to have the opportunity for private and
> continual discussion with their attorney.

Second Revised and Extended Order Regarding Court Operations, No. 25700-B-618,

at 9 (Wash. Apr. 29, 2020), http://www.courts.wa.gov/content/publicUpload/Supreme

3

No. 37590-1-III
*State v. Anderson*

%20Court%20Orders/Extended%20and%20Revised%20Supreme%20Court%20Order%2

0042920.pdf.

Mr. Anderson attended the May 12 resentencing hearing via video. His attorney

appeared telephonically. The hearing was very brief, generating only seven substantive

pages of a report of proceeding. During the hearing, there was no discussion regarding

whether Mr. Anderson had consented to appear via video. Nor was there any clarification

about whether Mr. Anderson and his attorney were able to communicate throughout the

hearing. The parties agreed to modify the judgment and sentence according to the three

issues identified in our prior decision. When addressed by the court, Mr. Anderson

confirmed he agreed with the modifications.

At the hearing's close, the court asked Mr. Anderson if he had been able to hear

and understand the proceedings. Mr. Anderson responded affirmatively, but also asked

how he was supposed to pay the outstanding restitution. The court instructed Mr.

Anderson to confer with his attorney. Mr. Anderson subsequently asked the court how

long he had to appeal the decision. The court told him that he had 30 days to make a

direct appeal, and that he should speak to his attorney regarding the process. The hearing

then adjourned.

4

No. 37590-1-III
*State v. Anderson*

A first amended judgment and sentence, entered May 12, 2020, reflected the changes agreed to at the hearing. The judgment included $75,430.49 in restitution, but made no reference to joint and several liability. In addition, although the trial court struck most of the discretionary financial obligations, the judgment and sentence form included prewritten language mandating that Mr. Anderson pay supervision fees as part of his community custody.

Mr. Anderson filed a timely notice of appeal of the amended judgment and sentence.

ANALYSIS[1]

*Right to be present*

For the first time on appeal, Mr. Anderson argues the superior court's videoconference resentencing hearing deprived him of his right to be present and to confer with counsel. Unpreserved errors are generally not subject to appeal as a matter of right. RAP 2.5(a). An exception can apply for manifest errors affecting the litigant's constitutional rights. RAP 2.5(a)(3). But not all constitutional rights are subject to the

---

[1] In the published portion of this opinion, we address Mr. Anderson's constitutional claims regarding the right to be present and the right to confer with counsel. We address the claims regarding errors in the amended judgment and sentence in the unpublished portion of the opinion.

manifest error standard. For example, violation of the constitutional right to confront

witnesses must be preserved for appellate review regardless of provisions of

RAP 2.5(a)(3). *See State v. Burns*, 193 Wn.2d 190, 210-11, 438 P.3d 1183 (2019).

Mr. Anderson's request for relief turns on the initial issue of whether he can meet the

manifest error standard.

Criminally accused persons have a constitutional right to be present at all critical

stages of court proceedings; however, this right is one that can be waived by failure to

object. *See State v. Jones*, 185 Wn.2d 412, 426, 372 P.3d 755 (2016); *State v. Sublett*,

176 Wn.2d 58, 124-25, 292 P.3d 715 (2012) (Madsen, C.J., concurring). As was likely

true here, a defendant may waive an in-person court appearance for strategic reasons,

such as health concerns. A trial court is not required to probe into the issue of whether

the defendant is voluntarily waiving the right to presence if no objection is made. To the

extent the virtual hearing process implicated Mr. Anderson's right to be present, this issue

has been waived.

*Right to counsel*

The constitutional right to counsel is different than the right to presence. The right

to counsel applies to all critical stages of criminal proceedings, including resentencing,

and cannot be lost without a specific waiver. *State v. Rupe*, 108 Wn.2d 734, 741, 743 P.2d

210 (1987); *City of Bellevue v. Acrey*, 103 Wn.2d 203, 208-12, 691 P.2d 957 (1984). Our cases recognize that deprivation of the right to counsel is a fundamental constitutional claim that can be raised for the first time on appeal, so long as the claim is manifest, as required by RAP 2.5(a)(3). *See, e.g.*, *State v. Brown*, 159 Wn. App. 1, 17, 248 P.3d 518 (2010); *State v. Holley*, 75 Wn. App. 191, 196-97, 876 P.2d 973 (1994), *abrogated on other grounds by In re Pers. Restraint of Yung-Chen Tsai*, 183 Wn.2d 91, 105-06, 351 P.3d 138 (2015).

The constitutional right to counsel demands more than just access to a warm body with a bar card. Among other things, it requires individuals charged with crimes to be able to confer privately with their attorneys at all critical stages of the proceedings. *See State v. Hartzog*, 96 Wn.2d 383, 402, 635 P.2d 694 (1981). The ability for attorneys and clients to consult privately need not be seamless, but it must be meaningful. As reflected in the Supreme Court's April 29, 2020, court operations order, it is the role of the judge to make sure that attorneys and clients have the opportunity to engage in private consultation.

The Supreme Court's decision in *State v. Gonzales-Morales*, 138 Wn.2d 374, 979 P.2d 826 (1999), expounds on the court's role in ensuring private attorney-client consultation. Mr. Gonzales-Morales primarily spoke Spanish and required an interpreter

to communicate with counsel and understand court proceedings. *Id*. at 376. During trial,

the State called a Spanish-speaking witness, but was unable to secure its own interpreter.

*Id*. The State asked to borrow Mr. Gonzales-Morales's interpreter during the witness's

testimony. *Id*. The trial court approved this request, subject to certain ground rules. *Id*.

at 377. The court determined the interpreter would remain seated at defense counsel table

during the trial. *Id*. The court also clarified that if Mr. Gonzales-Morales wished to

consult with his attorney during the testimony, he was entitled to alert the court and pause

the proceedings. *Id*.

The Supreme Court upheld the process used by the trial court over Mr. Gonzales-

Morales's constitutional objection. *Id*. at 386. The court reviewed similar cases from

other jurisdictions. *Id*. at 382-85. Those cases all noted that the use of a borrowed

interpreter does not violate the constitutional right to attorney consultation when the trial

court offers the defendant the option of interrupting testimony for a consultation. *Id*.

Mr. Anderson argues his case fails to meet the constitutional standard recognized

in *Gonzales-Morales*. We agree. Unlike what happened in *Gonzales-Morales*, the trial

court here never set any ground rules for how Mr. Anderson and his attorney could

confidentially communicate during the hearing. Nor were Mr. Anderson and his attorney

physically located in the same room, where they might have been able to at least engage

8

in nonverbal communication. Given Mr. Anderson participated by video from the jail and

his attorney was appearing by telephone from a separate location, it is not apparent how

private attorney-client communication could have taken place during the remote hearing.

It is unrealistic to expect Mr. Anderson to assume he had permission to interrupt the judge

and court proceedings if he wished to speak with his attorney.

Mr. Anderson has met his burden of showing the existence of a constitutional

error that is manifest, or obvious from the record. *See State v. O'Hara*, 167 Wn.2d 91,

98, 217 P.3d 756 (2009). Thus, the lack of error preservation is not a hurdle to relief

under RAP 2.5(a)(3). Nevertheless, our analysis does not end here. We must also assess

the issue of prejudice. *Id.* at 99. The parties agree the test for prejudice applicable in this

case is the constitutional harmless error analysis.[2] Under this test, prejudice is presumed

and the State bears the burden of proving harmlessness beyond a reasonable doubt. *State*

*v. Irby*, 170 Wn.2d 874, 885-86, 246 P.3d 796 (2011).

---

[2] Mr. Anderson cites *State v. Peña-Fuentes*, 179 Wn.2d 808, 812, 318 P.3d 257 (2014), which held unlawful interception of attorney-client communications is subject to a constitutional harmless error analysis. However, *State v. Ulestad*, 127 Wn. App. 209, 215, 111 P.3d 276 (2005), held structural error applied to deprivation of confidential attorney-client conversations during trial. We need not resolve the tension between *Peña-Fuentes* and *Ulestad*, as this matter has not been raised.

Our review of the record shows the State has met its burden of proving harmless error. Mr. Anderson received all the forms of relief that were requested at his resentencing hearing. Although Mr. Anderson complains his written amended judgment and sentence contains technical errors,[3] those issues did exist at the time of the in-person hearing. Attorney-client consultation would not have made a difference. Mr. Anderson also asserts that had he and his attorney been able to confidentially confer, he might have asked his attorney to expand the scope of the hearing beyond the issues identified on remand. We are unconvinced. Mr. Anderson and his attorney were able to confer prior to the hearing. Nevertheless, they did not object to the hearing being noted merely for "entry of an Amended Judgment and Sentence." CP at 76. In addition, there are no plausible topics that the court may have been willing to reconsider, beyond those already addressed. Even if Mr. Anderson had asked his attorney to try to expand the scope of the hearing, there is no reasonable basis for believing the result could have been different. The State has met its burden of showing constitutionally harmless error.

Although Mr. Anderson is not entitled to relief, this case is a cautionary tale for trial judges administering remote criminal proceedings. The COVID-19 pandemic has complicated the administration of justice in innumerable ways. Videoconferencing has

---

[3] The errors have been resolved in the unpublished portion of this opinion.

been an essential component of continued court operations. But courts must ensure videoconferencing occurs in a way that allows for private attorney-client consultation. The best method is to arrange for attorneys and clients to be located in a shared physical space, with access to additional communication technologies (such as text messaging devices) if necessary to maintain physical distancing. *See* REMOTE JURY TRIALS WORK GROUP, BEST PRACTICES IN RESPONSE TO FREQUENTLY ASKED QUESTIONS (FAQ), at 7-8 (2021), https://www.courts.wa.gov/newsinfo/content/Best%20Practices%20in%20Response%20to%20FAQ.PDF. In addition to these steps, trial courts should make a record of what has been done to ensure confidential communication. An explicit record will ensure the court's measures are understood and will also allow for meaningful appellate review.

Mr. Anderson has established constitutional error with regard to his claim regarding the right to counsel. As the State has met its burden of showing constitutionally harmless error, Mr. Anderson cannot establish prejudice and is not entitled to relief.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports, and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

11

*Legal financial obligations*

Mr. Anderson makes two objections to the legal financial obligations (LFOs) set forth in his amended judgment and sentence. First, he complains the trial court imposed community custody supervision fees, despite stating an intent to strike discretionary LFOs based on indigence. Second, he claims the amended judgment and sentence failed to accurately calculate his restitution or recognize that a portion of his restitution obligation is joint and several with his codefendants. We address each of Mr. Anderson's concerns in turn.

*Supervision fees*

A trial court's authority to impose community custody supervision fees is set by RCW 9.94A.703(2)(d), which provides that "[u]nless waived by the court, as part of a term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the [Department of Corrections]." Given that supervision fees are waivable, they are discretionary. However, they are not a "'cost'" under RCW 10.01.160(3) that "'shall not'" be imposed against an indigent defendant. *See State v. Spaulding*, 15 Wn. App. 2d 526, 536, 476 P.3d 205 (2020).

Here, the trial court stated its intent was to waive all discretionary LFOs based on Mr. Anderson's indigence. The requirement that Mr. Anderson pay supervision fees

12

is buried in a lengthy paragraph, part of the prewritten judgment and sentence form.

The record makes abundantly clear that the court's imposition of supervision fees was

inadvertent. The fees should therefore be struck from the judgment and sentence.

### *Restitution*

At resentencing, the trial court did not revisit the issue of restitution. The court

indicated it would strike all LFOs except for restitution "and the non-waivable victim

assessment." Report of Proceedings (May 12, 2020) at 6. Consistent with the court's oral

ruling and prior judgment, the amended judgment listed $75,430.49 in restitution and a

$500 crime victim penalty assessment, for a total of $75,930.49. These amounts are

accurate. While the amended judgment and sentence does not make any notations

regarding joint and several liability, this provision is specified in the court's prior order

setting restitution and payments. It is unclear whether any changes are necessary to the

amended judgment and sentence regarding joint and several liability. Nevertheless,

because the judgment and sentence must be amended to strike supervision fees, we order

that the document also be amended to specify joint and several liability, as set forth in the

trial court's January 24, 2017, order setting restitution and payments. *See* CP at 73-74.

CONCLUSION

Mr. Anderson has established constitutional error with regard to his claim regarding the right to counsel. As the State has met its burden of showing constitutionally harmless error, Mr. Anderson cannot establish prejudice and is not entitled to relief on this claim. This matter is remanded, however, with instructions to strike Mr. Anderson's community custody supervision fees and to note joint and several liability, consistent with the terms of the prior superior court order.

_____
Pennell, C.J.

WE CONCUR:

_____         _____
Siddoway, J.                        Lawrence-Berrey, J.

14