
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  39570-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT GAGE SREGZINSKI, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Robert Gage Sregzinski pleaded guilty to one count of first degree manslaughter and one count of second degree assault. At sentencing, the trial court imposed a high-end standard range sentence. Sregzinski appealed. We affirmed his conviction but remanded for resentencing following *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

At his resentencing hearing, Sregzinski appeared by video because the State of Oregon, where he was incarcerated, refused to extradite him to Washington for the hearing. Consistent with this court's mandate, the trial court allowed Sregzinski's counsel to argue for a lower sentence, but ultimately imposed the same 280-month sentence given that Sregzinski's offender score had fallen to 9 and his standard sentencing range thus remained the same.

No. 39570-7-III
*State v. Sregzinski*

In this second appeal, Sregzinski argues that the State failed to prove the comparability of his out-of-state convictions, his attorney was ineffective for acknowledging the Oregon convictions, and the trial court violated his right to confer privately with his attorney when he appeared by video.

We affirm Sregzinski's sentence, but remand for the limited purpose of striking legal financial obligations (LFOs). We conclude that Sregzinski affirmatively acknowledged the existence and comparability of his Oregon convictions, thus relieving the State of its obligation to prove these. We decline to consider whether his attorney was ineffective because we cannot conduct a comparability analysis on this record. While we agree that the failure to ensure that Sregzinski could confer privately with his attorney at sentencing was manifest error, we conclude that the State has met its burden of showing the error was harmless beyond a reasonable doubt. Finally, we remand to strike (1) any requirement from the community custody conditions that Sregzinski participate in alcohol treatment, (2) any obligation for Sregzinski to cover the cost of such treatment, and (3) the victim penalty assessment (VPA).

BACKGROUND

In May 2019, Sregzinski pleaded guilty to one count of first degree manslaughter and one count of second degree assault. In a signed plea statement, he affirmed that his offender score was 9+ and acknowledged his standard range. Sregzinski also acknowledged that

2

> [t]he standard sentence range is based on the crime charged and my criminal history. Criminal history includes prior convictions and juvenile adjudications or convictions, whether in this state, in federal court, or elsewhere.
>
> . . .
>
> The prosecuting attorney's statement of my criminal history is attached to this agreement. Unless I have attached a different statement, I agree that the prosecuting attorney's statement is correct and complete.

Clerk's Papers (CP) at 14.

Sregzinski did not attach a different statement. Thus, he "agree[d]" that the prosecution's statement of his criminal history was "correct and complete" for sentencing purposes. CP at 14.

Sregzinski's criminal history as recited by the State included the following prior crimes, their designation as felonies or misdemeanors, and associated offender score points, based on the sentencing statutes then in force as calculated in the presentence investigative report:

- Attempted murder, committed as an adult in 2016, in Umatilla County, Oregon. As a violent offense, this counted as 2 points.[1]

---

[1] In Washington, attempted murder is a serious violent offense, which ordinarily results in 3 points toward an offender score for a serious violent offense like first degree manslaughter. *See* RCW 9.94A.030(46); former RCW 9.94A.525(9) (2017). It is not clear from the record why the State counted this as 2 points instead of 3. The State may have concluded Sregzinski's commission of attempted murder in Oregon was factually comparable to a "violent"—but not a "serious violent"—Washington felony.

3

- Three counts of unlawful use of a firearm, also committed in 2016 in Umatilla County. As nonviolent adult felonies, each counted as 1 point, for a total of 3 points.

- Second degree burglary, committed as a juvenile in 2015, in Walla Walla County. As a nonviolent juvenile felony, this conviction counted as one-half point.

- Residential burglary, committed in 2014, in Walla Walla County. As a nonviolent juvenile felony, this conviction counted as one-half point.

- Residential burglary, committed in 2014, in Walla Walla County. As a nonviolent juvenile felony, this conviction counted as one-half point.

- Possession of a stolen vehicle, committed in 2014, in Walla Walla County. As a nonviolent juvenile felony, this conviction counted as one-half point.

- Second degree possession of stolen property, committed in 2014, in Walla Walla County. As a nonviolent juvenile felony, this conviction counted as one-half point.

- Simple possession of a controlled substance,[2] committed in 2014, in Walla Walla County. As a nonviolent juvenile felony, this conviction counted as one-half point.

*See* CP at 24-25, 110-12; *see generally* former RCW 9.94A.525(9).

Sregzinski's offender score also includes points for the current felonies, which are treated as prior offenses when scoring other crimes for sentencing. *See* RCW 9.94A.525(1), .589(1)(a). Thus, because Sregzinski was being sentenced for another Walla Walla County felony—second degree assault—on the same day, that offense

4

counted against his offender score for first degree manslaughter. As a violent offense, the

second degree assault conviction added an additional 2 points to Sregzinski's offender

score. *See* RCW 9.94A.030(58); former RCW 9.94A.525(9).

In total, Sregzinski's offender score was 10 at his original sentencing. The trial

court described it as "9+" in its written order. Sregzinski agreed that his offender score

was "9+."

Sregzinski was sentenced in July 2019. The trial court adopted the parties' agreed

statement of criminal history. The defense sought a low-end sentence of 210 months,

while the State sought a high-end sentence of 280 months. The court agreed with the

parties that Sregzinski's offender score exceeded 9, and imposed a 280-month sentence—

the very top of the standard range.[3]

As to LFOs, the court found Sregzinski was indigent and imposed only the then-

mandatory VPA. His confinement would be followed by 36 months of community

custody, a condition of which was participation in an "inpatient or outpatient

alcohol/drug program at his expense." CP at 30-31.

---

[2] We refer to this conviction as Sregzinski's "*Blake*" conviction.

[3] The court imposed a standard-range sentence of 84 months for the second degree assault charge, to run concurrently with the 280-month sentence for first degree manslaughter. The court ordered Sregzinski to begin serving his Washington sentence once released from his ongoing confinement in Oregon for attempted murder and related crimes.

Sregzinski appealed his convictions and sentence. He sought reversal of his convictions, arguing his guilty plea was invalid. *State v. Sregzinski*, No. 37043-7-III (Wash. Ct. App. May 29, 2020) (*Sregzinski* I). He also challenged components of his sentence, but did not raise any concerns about the calculation of his offender score in general, nor the comparability of his Oregon convictions.

While Sregzinski's appeal was pending, the Washington Supreme Court decided *Blake*, which held that our state's strict liability drug possession statute was unconstitutional. 197 Wn.2d 170. This court allowed the parties to provide supplemental briefing on *Blake*. *See* Letter from Renee S. Townsley, Clerk/Administrator, *Sregzinski* I, No. 37043-7-III (Wash. Ct. App. April 5, 2021).

Sregzinski had one prior conviction invalidated by *Blake*, which had counted as one-half point toward his offender score. Thus, *Blake* caused his offender score to fall from 10 to 9.5, and rounding down as required, to 9. *See* RCW 9.94A.525 ("The offender score is . . . rounded down to the nearest whole number."); *see also* CP at 51. Once an offender score reaches 9, the standard sentencing range maxes out. *See* RCW 9.94A.510.

In his supplemental brief, Sregzinski conceded his standard sentencing range would *not* change even with the vacatur of the *Blake* conviction. *See* Supp. Br. of Appellant at 11; *Sregzinski* I, No. 37043-7-III (Wash. Ct. App. Mar. 31, 2021). Nevertheless, he sought a full resentencing, claiming the error was not harmless. *See id.* In making this

6

argument, he relied on this court's opinion in *State v. McCorkle*, 88 Wn. App. 485, 945

P.2d 736 (1997), *aff'd*, 137 Wn.2d 490, 973 P.2d 461 (1999). The State filed a

supplemental response brief. It was a single page, stating simply that it "concedes the

error stated in [Sregzinski's] brief." Supp. Br. of Resp't at 1, *Sregzinski* I, No. 37043-7-III

(Wash. Ct. App. May 4, 2021). We rejected Sregzinski's challenge to his guilty plea but

accepted the parties' concessions without analysis and "remanded for resentencing."

CP at 49; *see Sregzinski* I, No. 37043-7-III, slip op. at 4-6 (Wash. Ct. App. May 13, 2021)

(unpublished), https://www.courts.wa.gov/opinions/pdf/370437_unp.pdf.

At the time, Sregzinski was incarcerated by the State of Oregon, which refused

Governor Inslee's request that Sregzinski be extradited to our state for resentencing. As a

result, the trial court granted the State's request that Sregzinski be allowed to appear via a

videoconferencing platform at his resentencing hearing.

At the resentencing hearing, Sregzinski appeared via videoconference and told the

court he wanted to "retract [his] plea." RP (Feb. 7, 2023) at 6. The trial court responded

it would not consider Sregzinski's attack on the validity of his plea because this court had

rejected those arguments and remanded only for resentencing.

Sregzinski's counsel appeared in person. When the trial court turned to

Sregzinski's attorney,[4] counsel conceded that the resentencing "feels like a formality

---

[4] At resentencing, Sregzinski was represented by the same attorney who
represented him at the initial sentencing.

because *he still has his offender score*." Rep. of Proc. (RP) (Feb. 7, 2023) at 9 (emphasis added). She acknowledged that she had reviewed the certified copies of Sregzinski's Oregon judgment with Sregzinski before sentencing. *Id*. Finally, counsel explained she was renewing her request from the original sentencing hearing: "I said it at his original sentencing and it is still my argument today that I believe the 210 months is still a significant amount of time," which would also be consistent with the plea agreement and take into account Sregzinski's purported immaturity. *Id.* The prosecutor, on the other hand, urged the court to maintain the 280-month sentence, noting that "the *Blake* decision" had not "made any difference in Sregzinski's . . . standard range." *Id.* at 10.

The court proceeded to its oral ruling, declining to change Sregzinski's term of confinement:

> Okay. So the issue, of course, is the re-sentencing mandate.
>
> . . .
>
> In practical application, there is no change to the standard range sentence with the new offender score of nine.
>
> . . .
>
> [T]he court does not see a basis to alter the sentence that was imposed by [the first sentencing judge]. And so the Court will sentence Mr. Sregzinski to 280 months on Count 1 and 84 months on Count 2 for total months of confinement is [sic] 280.

*Id.* at 15. At no point did the court explain how Sregzinski could speak to his attorney confidentially during the resentencing hearing.

8

The court subsequently reordered the 280-month sentence in a written judgment. The order's recitation of Sregzinski's criminal history omitted his *Blake* conviction and listed his offender score as "9" rather than "9+," but was otherwise identical to the previous judgment's recitation. The court found Sregzinski was indigent and imposed only the $500 VPA. As one of Sregzinski's community custody conditions, he was required to "participate in . . . [i]npatient or outpatient acohol [sic]/drug program at his expenese [sic]." CP at 91.

Sregzinski appeals his second judgment and sentence.

ANALYSIS

1.  CALCULATION OF OFFENDER SCORE

Sregzinski contends the trial court erred in calculating his offender score because the State failed to prove his Oregon crimes were comparable to any Washington felony. Alternatively, he contends his trial counsel rendered ineffective assistance by failing to object to the comparability of the Oregon offenses. The State responds that Sregzinski relieved the State of its burden to prove the existence and comparability of the out-of-state convictions by stipulating to the State's recitation of his criminal history and admitting that his offender score included the Oregon convictions. We agree with the State.

The State generally bears the burden of proving the existence and comparability of out-of-state convictions. *State v. Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999). This

is not an overly difficult burden and can be satisfied with "evidence that bears some 'minimum indicia of reliability.'" *In re Pers. Restraint of Adolph*, 170 Wn.2d 556, 569, 243 P.3d 540 (2010) (quoting *Ford*, 137 Wn.2d at 480-81). This burden can also be satisfied by a defendant's affirmative acknowledgment that his prior out-of-state convictions are properly included in his offender score. *State v. Ross*, 152 Wn.2d 220, 230, 95 P.3d 1225 (2004) (citing *Ford*, 137 Wn.2d at 483 n.5).

When a defendant pleads guilty pursuant to a plea agreement, the State and the defendant are each required to provide the court with their understanding of the defendant's criminal history. RCW 9.94A.441; CrR 4.2(e). Here, the State submitted a statement of criminal history that included Sregzinski's Oregon convictions. In lieu of making a separate statement of his criminal history, Sregzinski agreed that the prosecuting attorney's statement of his criminal history, attached to his statement on plea of guilty, was "correct and complete." CP at 14. Sregzinski indicated that his standard sentencing range was based on his criminal history, and that criminal history included out-of-state convictions. Finally, as part of the plea, he also acknowledged his offender score and standard range.

By affirmatively admitting that his criminal history correctly included the Oregon convictions and acknowledging that his offender score was 9+ based on a criminal history that included his out-of-state convictions, Sregzinski affirmatively acknowledged the existence and comparability of his criminal history. "[A] defendant's affirmative

10

acknowledgment that his prior out-of-state . . . convictions are properly included in his offender score" relieves the State of its burden. *Ross*, 152 Wn.2d at 230 (emphasis omitted). "[O]nce a defendant acknowledges the existence and comparability of prior convictions, no further proof is necessary." *State v. Mendoza*, 165 Wn.2d 913, 927, 205 P.3d 113 (2009) (citing *Ross*, 152 Wn.2d at 233). The State was not required to supplement Sregzinski's stipulation with any additional proof. *See Ross*, 152 Wn.2d at 230.

Sregzinski protests that he only agreed to the "existence" of the Oregon convictions, not their "comparability," citing *Mendoza*, 165 Wn.2d at 927. We disagree with this characterization of the record. Sregzinski affirmatively agreed that the statement of criminal history included his Oregon convictions and was complete and correct. Within his statement on plea of guilty, he acknowledged that his offender score, as calculated using the out-of-state convictions, was a 9+ and agreed to his sentencing range based on this offender score. Finally, Sregzinski agreed that based on this criminal history, offender score, and standard range, the parties had reached a plea agreement wherein each party would request a sentence within the agreed upon standard range. Once a defendant "acknowledg[es] that his prior out-of-state . . . convictions are properly included" in the calculation of his standard range, the State need not provide any more proof. *Ross*, 152 Wn.2d at 230.

The cases cited by Sregzinski to support his position are inapposite. *See State v. Thiefault*, 160 Wn.2d 409, 413, 158 P.3d 580 (2007); *State v. Lucero*, 168 Wn.2d 785, 230 P.3d 165 (2010) (per curiam). Neither case involved sentencing after a plea or a defendant's affirmative acknowledgment of his criminal history and offender score including out-of-state convictions.

Sregzinski alternatively claims his trial counsel rendered ineffective assistance of counsel by failing to challenge the comparability of the Oregon convictions. Effective assistance of counsel is guaranteed by the state and federal constitutions. *See* U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. To succeed on this claim, Sregzinski must show his trial counsel's performance was (1) objectively deficient and (2) prejudicial. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Failure to meet either element is dispositive. *See In re Pers. Restraint of Pleasant*, 21 Wn. App. 2d 320, 326, 509 P.3d 295 (2022). Sregzinski must also overcome a strong presumption that trial counsel's performance was effective. *McFarland*, 127 Wn.2d at 335; *see also Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003).

We decline to review Sregzinski's claim of ineffective assistance of counsel because the record is insufficient. Because we cannot perform a comparability analysis on this record, we cannot determine whether counsel's performance was deficient or whether any deficiency resulted in prejudice. *McFarland*, 127 Wn.2d at 335; *see State v. Lazcano*, 188 Wn. App. 338, 355-56, 354 P.3d 233 (2015) (citing RAP 2.5(a)(3)). If

12

Sregzinski has evidence, outside the present record, indicating that a comparability challenge would have succeeded, his remedy for this error is to file a personal restraint petition and argue his counsel was ineffective through a collateral attack. *See McFarland*, 127 Wn.2d at 338.

2.   RIGHT TO CONFER WITH ATTORNEY

Sregzinski contends the trial court violated his right to confer privately with his attorney at resentencing because he appeared remotely via videoconference and the court failed to set ground rules on how confidential communication could take place. The State argues that any error was waived because Sregzinski did not object below. We conclude that even under a constitutional harmless error analysis, any error was harmless.

At the resentencing hearing, Sregzinski did not raise an objection based on the inability to confer privately with his attorney. Generally, we do not address unpreserved error unless the defendant can demonstrate manifest constitutional error. RAP 2.5(a)(3). While our jurisprudence on the correct procedures for video hearings continues to evolve, we have consistently held that a defendant raising an unpreserved issue of interference with the right to privately confer with counsel during a video hearing is subject to review if the defendant can show manifest constitutional error. *See State v. Anderson*, 19 Wn. App. 2d, 556, 563, 491 P.3d 880 (2021); *Bragg v. State*, 28 Wn. App. 2d 497, 507, 536 P.3d 1176 (2023); *State v. Dimas*, ___ Wn. App. 2d ___, 544 P.3d 597, 600-01 (2024).

13

Under this standard, Sregzinski must demonstrate that the error is truly of constitutional

magnitude and manifest. *Dimas*, 544 P.3d at 601.

Sregzinski demonstrates that the trial court's failure to ensure he could confer

privately with his attorney at resentencing is an error of constitutional magnitude. Under

both the Washington and United States Constitutions, criminal defendants are entitled to

the effective assistance of counsel at sentencing hearings. *See State v. Heddrick*, 166

Wn.2d 898, 909-10, 215 P.3d 201 (2009) (citing U.S. CONST. amend. VI; WASH. CONST.

art. I, § 22); *State v. Rupe*, 108 Wn.2d 734, 741, 743 P.2d 210 (1987) ("Sentencing is a

critical stage of the proceedings, at which a defendant is constitutionally entitled to be

represented by counsel."). "Among other things," the right to counsel "requires

individuals charged with crimes to be able to confer privately with their attorneys at all

critical stages of the proceedings."[5] *Anderson*, 19 Wn. App. 2d at 562-63; *see also*

*Bragg*, 28 Wn. App. 2d at 503-04. "When videoconferencing is used, courts must take

care to ensure criminally accused persons are able to confidentially confer with counsel

throughout the proceedings." *Anderson*, 19 Wn. App. 2d at 558.

Both the court rules and our Supreme Court have authorized certain hearings to be

conducted with persons appearing remotely. However, even when authorized, a trial

---

[5] The constitutional right to privately confer with counsel during a hearing is
separate from the right to physical presence at a hearing. *See State v. Anderson*, 19 Wn.
App. 2d 556, 562, 497 P.3d 880 (2021). Sregzinski argues that only the former right was
violated, not the latter.

14

No. 39570-7-III
*State v. Sregzinski*

court is responsible for ensuring that the defendant has a means of privately

communicating with their attorney. *See* CrR 3.4(e)(1), (3); Order Regarding Court

Operations After October 31, 2022, No. 25700-B-697, at 4 (Wash. Oct 27, 2022)

https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders/Order

%2025700A697.pdf.[6]

In *Bragg*, Division 1 interpreted our decision in *Anderson* as not establishing a

bright line rule that courts commit a per se constitutional violation if they fail to establish

a process on the record for confidential attorney-client communication. 28 Wn. App. 2d

at 507. Instead, the court in *Bragg* held that "reviewing courts should consider the

totality of the circumstances, including whether the trial court explicitly established a

process for such communications, given the variety of different circumstances that may

occur." *Id.* (emphasis omitted). One such consideration, however, is whether the court

provided specific guidance for private communications on the record. *Id*. at 508.

Here, there is nothing in the record indicating that Sreglinski could confer

privately with his attorney during the resentencing, or knew that he had the option to do

---

[6] Paragraph 7 of the Order provides: "Courts should continue to allow telephonic or video appearances for all scheduled criminal and juvenile offender hearings whenever appropriate. All in-person appearances must be conducted with strict observance of public health measures. *For all hearings that involve a critical stage of the proceedings, courts shall provide a means for defendants and respondents to have the opportunity for private and continual discussion with their attorney*." (Emphasis added.)

15

so. The court did not establish guidelines on the record and there is no indication that a process was available. This was error.

Sregzinski also demonstrates that the error was manifest. An error is manifest when a defendant shows actual prejudice. *Dimas*, 544 P.3d at 601. To do so, the defendant must "make a plausible showing that the claimed error had practical and identifiable consequences at trial." *Id*.

Assuming we find manifest error, we then apply a constitutional harmless error analysis, which places the burden on the State to show that any error was harmless. *Anderson*, 19 Wn. App. 2d at 564. However, the analysis for prejudice under manifest error and the analysis for constitutional harmless error are different. *State v. O'Hara*, 167 Wn.2d 91, 99-100, 217 P.3d 756 (2009).

> In order to ensure the actual prejudice and harmless error analyses are separate, the focus of the actual prejudice must be on whether the error is so obvious on the record that the error warrants appellate review. It is not the role of an appellate court on direct appeal to address claims where the trial court could not have foreseen the potential error or where the prosecutor or trial counsel could have been justified in their actions or failure to object. Thus, to determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error.

*Id*. (footnote omitted) (citation omitted).

Considering the circumstances in this case, along with existing case law, court rules, and the Supreme Court directive, we conclude that the failure to ensure that

16

Sregzinski could confer privately with his attorney during resentencing was a practical and identifiable error that the trial court could have foreseen and should have corrected even without an objection. Thus, it was manifest.

Establishing constitutional manifest error does not end the analysis. Sregzinski argues that the error was structural and once found, requires automatic reversal, citing *State v. Ulestad*, 127 Wn. App. 209, 215, 111 P.3d 276 (2005). We follow our decision in *Bragg* where we noted that *Ulestad* was distinguishable because it dealt with deprivation of counsel at trial and a right to constant communication granted by a separate statute. *Bragg*, 28 Wn. App. 2d at 512. Instead, we confirm that once a constitutional error is found, the burden shifts to the State to show the error was harmless beyond a reasonable doubt. *Id.*; *Anderson*, 19 Wn. App. 2d at 564.

Here, we conclude that the State has met its burden of showing the error was harmless. As Sregzinski's own counsel conceded at resentencing, the hearing "fe[lt] like a formality" because nothing had changed from the initial sentencing hearing, including Sregzinski's standard range and the plea agreement. RP (Feb. 7, 2023) at 9. Indeed, the court imposed the same sentence it had imposed at the initial sentencing hearing in which all parties appeared in person.

Sregzinski contends that, had he been able to privately consult with his attorney during the resentencing hearing, his attorney may have raised the comparability argument he now advances on appeal. This argument is speculative under this record. Defense

counsel acknowledged on the record that she had reviewed a certified copy of the Oregon judgment with her client before sentencing. There is nothing to show that a private conversation with Sregzinski during the hearing would have changed her analysis of the Oregon conviction.

3.   COMMUNITY CUSTODY CONDITIONS AND LFOS

Sregzinski assigns error to a condition of his community custody, by which the trial court required him to complete "[i]npatient or outpatient acohol [sic]/drug" treatment. CP at 91. He notes the record is devoid of evidence that alcohol—as opposed to other drugs—contributed to his crimes. The State agrees that, on remand, the word "alcohol" may be struck from the treatment requirement. We accept the State's concession. *See State v. Jones*, 118 Wn. App. 199, 208, 76 P.3d 258 (2003) ("[W]e hold that alcohol counseling 'reasonably relates' to the offender's risk of reoffending, and to the safety of the community, only if the evidence shows that alcohol contributed to the offense."); *see also State v. Houck*, 9 Wn. App. 2d 636, 646, 446 P.3d 646 (2019) (holding that trial courts lack authority to impose community custody conditions unless authorized by the legislature); RCW 9.94A.703(3)(c), (d) (authorizing trial courts to order rehabilitation programming as a condition of community custody only if it reasonably relates to the circumstances of the offense).

18

Sregzinski also assigns error to the court's requirement that he "participate in" such treatment "at his expenese [sic]," because such a requirement is not statutorily authorized. CP at 91. The State concedes and we agree that Sregzinski may not be required to cover the expense of his substance abuse treatment. *See State v. Wemhoff*, 24 Wn. App. 2d 198, 200-02, 519 P.3d 297 (2022) (explaining that a legislative amendment taking effect in 2022 deleted a statutory subsection dealing with offenders' obligation to pay their supervision fees). Finally, Sregzinski contends, and the State concedes, that the VPA should be struck on remand. The legislature amended the VPA statute by passing Engrossed Substitute H.B. 1169, 68 Leg., Reg. Sess. (Wash. 2023), with the amendments taking effect July 1, 2023. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023) (citing LAWS OF 2023, ch. 449, § 1). The statute now prohibits courts from imposing the VPA on defendants, like Sregzinski, who are found to be indigent, and requires courts to waive any VPA imposed before the effective date, on the offender's motion, if the offender is unable to pay. *See* RCW 7.68.035(4), (5)(b). This court should accept the State's concession and remand with instructions to strike the VPA from Sregzinski's sentence.

No. 39570-7-III
*State v. Sregzinski*

We affirm Sregzinski's sentence and remand for the limited purpose of striking the VPA from the judgment and sentence as well as the term "alcohol" from any treatment requirement. Additionally, the court shall delete the requirement that Sregzinski pay for his treatment costs.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.

20