# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  57802-6-II |
| Respondent, | |
| v. | |
| RYAN SAMUAL DICKERSON, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Ryan S. Dickerson was charged with several criminal counts related to domestic violence allegations.  In the course of pretrial proceedings, several hearings were conducted remotely through Zoom.  Ultimately, Dickerson was convicted.

Dickerson appeals, arguing that a specific pretrial competency hearing conducted by Zoom violated his constitutional right to privately confer with counsel at a critical stage of the proceedings.  Dickerson also argues that the superior court erred by imposing the crime victim penalty assessment (VPA), the DNA collection fee, and community custody supervision fees.

We affirm Dickerson's convictions, but remand for the superior court to strike from his judgment and sentence the VPA, the DNA collection fee, and community custody supervision fees (and a $250 jury demand fee).

FACTS

Following an investigation into domestic violence allegations with an ex-girlfriend, the State charged Dickerson with two counts of residential burglary and four counts of violation of a court order.

Shortly after Dickerson was charged, the superior court ordered him to undergo an evaluation to determine whether he was competent to stand trial. The resulting report concluded that Dickerson was not competent because he lacked the capacity to rationally understand the proceedings against him and to assist in his own defense. The superior court ordered Dickerson to receive restoration treatment, and Dickerson was sent to Western State Hospital (WSH).

Eventually, Dickerson received an updated evaluation that concluded that he was competent to stand trial. According to the report, there was "no evidence of lingering mental illness symptoms that would expectedly interfere with [Dickerson's] competency-related capacities." Clerk's Papers at 62.

The superior court held a competency review hearing. Dickerson, defense counsel, and the prosecutor all appeared remotely via Zoom. Based on the updated evaluation and with the agreement of the parties, the superior court found that Dickerson was competent to stand trial. The parties then briefly discussed rescheduling the trial, and an agreed trial date was entered.

The brief hearing was about to conclude when Dickerson asked the superior court if he could speak with his defense counsel. The following exchange took place:

[Dickerson]: Thank you. Could I have a—a word with [defense counsel], at all?

THE COURT: [Defense counsel] will touch [base] with you off the docket, separately. Okay.

Verbatim Rep. of Proc. (VRP) at 11-12.  Dickerson did not object, and the hearing concluded.  At no point did Dickerson or his counsel object to conducting the hearing remotely by Zoom.  Nor did Dickerson make any other request to confer with his counsel during this hearing.

The case proceeded to trial, and the jury found Dickerson guilty of most of the charged counts.  The superior court imposed a low-end sentence.  The superior court also found Dickerson indigent and stated that it intended to waive all non-mandatory fees, fines, and costs.  Nevertheless, Dickerson's judgment and sentence included community custody supervision fees, the DNA collection fee, the VPA, and a $250 jury demand fee.

Dickerson appeals.

## ANALYSIS

### I.  RIGHT TO CONFER WITH COUNSEL

Dickerson argues that his constitutional right to confer with counsel was violated during his competency review hearing that was conducted remotely via Zoom.  We disagree.

#### A.  LEGAL PRINCIPLES

Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution, a criminal defendant has the right to counsel at critical stages in the litigation.  *State v. Heddrick*, 166 Wn.2d 898, 909-910, 215 P.3d 201 (2009).  This right to counsel includes the ability for a defendant to confer meaningfully and privately with their attorney at all critical stages of the proceedings.  *State v. Dimas*, 30 Wn. App. 2d 213, 219, 544 P.3d 597 (2024).  The trial court is responsible for ensuring that attorneys and clients have the opportunity to engage in private consultation.  *Id.*  In determining whether the right to confer has been violated, "reviewing courts should consider the totality of the circumstances, including whether the trial

court explicitly established a process for such communications, given the variety of different circumstances that may occur." *State v. Bragg*, 28 Wn. App. 2d 497, 507, 536 P.3d 1176 (2023) (emphasis omitted).

Although deprivation of this right to confer with counsel is a constitutional claim, it may be raised for the first time on appeal only if the error is manifest. *Dimas*, 30 Wn. App. 2d at 220; RAP 2.5(a)(3). An error is manifest under RAP 2.5(a)(3) if the defendant can show actual prejudice, demonstrated by a " 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.' " *State v. J.W.M.*, 1 Wn.3d 58, 91, 524 P.3d 596 (2023) (alteration in original) (internal quotation marks omitted) (quoting *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)).

In determining whether the defendant has established actual prejudice, the error must be "so obvious . . . that the error warrants appellate review." *O'Hara*, 167 Wn.2d at 100. An error is not manifest if the facts necessary to evaluate the claimed error are not in the record on appeal. *J.W.M.*, 1 Wn.3d at 91. The defendant has the burden of demonstrating manifest constitutional error. *State v. Schlenker*, ___ Wn. App. 2d ___, 553 P.3d 712, 725 (2024) ("The demands of manifest constitutional error shift the burden of showing prejudice to the accused.").

RAP 2.5(a) was adopted to encourage " 'the efficient use of judicial resources. ' " *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84 (2011) (quoting *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)). The rule ensures that the trial court has the opportunity to correct any errors, "thereby avoiding unnecessary appeals." *Id.* at 304-05.

B. DICKERSON CANNOT DEMONSTRATE MANIFEST ERROR

Pointing to one specific competency hearing, Dickerson argues that conducting the hearing by Zoom violated his constitutional right to privately confer with counsel. He asserts that there was no indication from the record that he was able to privately consult with his attorney during the hearing. He further contends that "it is possible that consultation would have revealed issues of competency that should have been addressed before trial." Br. of Appellant at 11-12. However, because Dickerson failed to object at the time of the hearing, he can only raise the issue for the first time on appeal if he can establish the error was manifest under RAP 2.5(a)(3). *Dimas*, 30 Wn. App. 2d at 220.

Showing a manifest error under these circumstances requires more than merely alleging a right to confer was compromised—it requires the defendant show the results of the proceedings would have been different. *See id.* at 221-23. In *Dimas*, the defendant appeared at several video hearings remotely from a jail booth while his counsel was located somewhere else. *Id.* at 215, 218. Although the defendant did not object to this arrangement before the trial court, he argued on appeal that being located in the jail booth and separated from his counsel violated his right to privately confer with counsel. *Id.* at 218. The *Dimas* court explained that the defendant could not show the error was manifest unless the defendant could establish that an ability to confer with his defense counsel would have changed the outcome of any of the proceedings (something the defendant was unable to show). *Id.* at 221-23. In reaching this conclusion, the *Dimas* court distinguished a decision from Division Three that appeared to take a more lenient approach.

*Id.* at 221. In *State v. Anderson*[1], under similar circumstances involving the right to confer during a remote hearing, Division Three readily found a manifest constitutional error. But the *Dimas* court pointed out that *Anderson* merely declared, with minimal explanation, that the claimed error was manifest. 30 Wn. App. 2d at 221.

We agree that *Dimas* sets forth the proper question for whether Dickerson can establish a manifest error—he must show that if he had been given the opportunity to confer with his defense counsel at the hearing, the outcome of the hearing would have been different. *Id.* at 221-23.

Dickerson cannot make this showing. The hearing in question (his competency review hearing) only addressed issues that were agreed to by the parties. The parties stipulated to Dickerson's competency based on his most recent competency evaluation and agreed to a new trial date. Even if Dickerson had consulted privately with his counsel during the hearing, he has not shown how that consultation would have changed anything about the outcome of the hearing. He speculates that it is *possible* that consulting with his counsel during the hearing could have revealed further competency issues. But in the face of an updated competency evaluation that concluded the opposite, he fails to show that this *possibility* rises to the level required to be a practical and

---

[1] 19 Wn. App. 2d 556, 563, 497 P.3d 880 (2021), *review denied*, 199 Wn.2d 1004 (2022).

identifiable consequence that would have changed the outcome of the hearing.[2]  Accordingly, Dickerson cannot demonstrate that the claimed error was manifest.

Dickerson suggests that the level necessary to show a manifest error is not so high; he appears to assert that any denial of the right to confer with counsel, by itself without more, constitutes manifest constitutional error.  Dickerson provides no in-depth explanation for this proposition; he merely cites, in one sentence, Division Three's decision in *Anderson*.  As noted above, although it is true that *Anderson* found a manifest constitutional error under circumstances similar to this case, the opinion does not include an explanation of its rationale.[3]  19 Wn. App. 2d at 563.  As suggested by *Dimas*, *Anderson* is of limited value on this question of manifest constitutional error because of its cursory discussion.  30 Wn. App. 2d at 221.  Indeed, there is no indication in *Anderson* that the defendant made any showing of any practical and identifiable

---

[2] Prior to the competency review hearing in question, there was an earlier hearing held by Zoom while Dickerson was still receiving services at WSH.  As the hearing was concluding, Dickerson asked the superior court, "Can I have a breakout with my attorney?"  VRP at 7.  The superior court accommodated Dickerson's request for a breakout room with his counsel.

Notably, at this earlier hearing, Dickerson demonstrated both the ability to request a private conference with his counsel and the knowledge that the Zoom platform called such a conference a "breakout."  VRP at 7.  Dickerson's knowledge about "breakouts" and his previous willingness to ask for them further support the conclusion that a consultation with his attorney would not have changed anything about the outcome of the hearing.

[3] We note that Court of Appeals' panels are often limited by the arguments presented by the parties. *Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, 2 Wn.3d 36, 50, 534 P.3d 339 (2023) (explaining that Washington courts generally follow the rule of party presentation).

consequences to the proceedings from the asserted error. 19 Wn. App. 2d at 563. Thus, we reject Dickerson's reliance on *Anderson*.[4]

Because Dickerson did not object to his Zoom hearing below and he cannot demonstrate that the claimed error was manifest, we decline to consider his unpreserved claim that his right to confer with counsel was violated.

II. IMPOSITION OF LEGAL FINANCIAL OBLIGATIONS

Dickerson argues that because the superior court found him indigent, we should remand for the superior court to strike the VPA, the DNA collection fee, and community custody supervision fees. The State concedes that the VPA, the DNA collection fee, and supervision fees should be stricken; the State also concedes that the $250 jury demand fee should be stricken as well.

We accept the State's concessions and remand to the superior court to strike the VPA, the DNA collection fee, community custody supervision fees, and the $250 jury demand fee.

CONCLUSION

We affirm Dickerson's convictions, but remand for the superior court to strike the VPA, the DNA collection fee, community custody supervision fees, and the jury demand fee from his judgment and sentence.

---

[4] Although Dickerson also relies on Division One's recent case, *Bragg v. State*, 28 Wn. App. 2d 497, 502-11, 536 P.3d 1176 (2023) for the proposition that the trial court was required to provide guidance on how he was to privately confer with counsel in the course of the video hearings, he does not appear to cite the case for the threshold issue of manifest error. Thus, we do not further discuss *Bragg*.

No. 57802-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
PRICE, J.

We concur:

_____
MAXA, P.J.

_____
GLASGOW, J.